1  DAVID H. KRAMER, State Bar No. 168452, *dkramer@wsgr.com*
   MICHAEL H. RUBIN, State Bar No. 214636, *mrubin@wsgr.com*
2  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
3  650 Page Mill Road
   Palo Alto, CA 94304-1050
4  Telephone: (650) 493-9300
   Facsimile:  (650) 565-5100
5
   *Attorneys for Non-Party Respondents*
6  *Artis Capital Management, L.P., Sequoia*
   *Capital Operations LLC and*
7  *TriplePoint Capital LLC*

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11

12  VIACOM INTERNATIONAL INC., ET AL.    )   CASE NO.: 3:08-MC-80129-SI
                                         )
13              Plaintiffs,              )   [Case No. 07-cv-02103 (LLS) in the
                                         )   U.S. D.C., S.D.N.Y]
14        v.                             )
                                         )   **DECLARATION OF MICHAEL H.**
15  YOUTUBE, INC., ET AL.                )   **RUBIN IN SUPPORT OF**
                                         )   **RESPONDENTS' OPPOSITION TO**
16              Defendants.              )   **PLAINTIFFS' JOINT MOTION TO**
                                         )   **COMPEL PRODUCTION OF**
17                                       )   **DOCUMENTS PURSUANT TO**
                                         )   **SUBPOENAS TO ARTIS CAPITAL**
18                                       )   **MANAGEMENT L.P., SEQUOIA**
                                         )   **CAPITAL OPERATIONS LLC, AND**
19                                       )   **TRIPLEPOINT CAPITAL LLC**
                                         )
20  _____  )   [Case No. 07-cv-03532 (LLS) in the
                                         )   U.S. D.C., S.D.N.Y]
21  THE FOOTBALL ASSOCIATION PREMIER     )
    LEAGUE LIMITED, ET AL.               )
22                                       )
                Plaintiffs,              )   Date:        August 15, 2008
23                                       )   Time:        9:00 a.m.
          v.                             )   Courtroom:   10
24                                       )   Judge:       Honorable Susan Illston
    YOUTUBE, INC., ET AL.                )
25                                       )
                Defendants.              )
26  _____  )

27

28

I, Michael H. Rubin, hereby declare that:

1.    I am an attorney with Wilson Sonsini Goodrich & Rosati.  I submit this declaration in support of Respondents' Opposition to Plaintiffs' Joint Motion to Compel Pursuant to Subpoenas to Artis Capital Management L.P. ("Artis"), Sequoia Capital Operations LLC, ("Sequoia") and TriplePoint Capital LLC ("TriplePoint") (collectively, the "Non-Parties"). I have personal knowledge about the facts described below and if called upon to testify, could competently testify to them.

2.    Attached hereto as Exhibit A is a true and correct copy of Viacom International, Inc.'s First Set of Requests for Production of Documents and Electronically Stored Information to YouTube, Inc., YouTube, LLC and Google Inc, propounded in *Viacom International Inc. et al. v. YouTube, Inc., et al.,* Case No. 1:07-CV-02103 (LLS).

3.    Attached hereto as Exhibit B is a true and correct copy of The Football Association Premier League, et al.'s First Set of Requests for Production of Documents and Electronically Stored Information to YouTube, Inc., YouTube, LLC and Google Inc, propounded in *The Football Association Premier League, et al. v. YouTube, Inc., et al*., Case No. 1:07-cv-03532 (LLS).

4.    Attached hereto as Exhibit C is a true and correct copy of an excerpt of the transcript of the July 15, 2008 hearing before the Honorable Judge Stanton of the United States District Court for the Southern District of New York, in *The Football Association Premier League, et al. v. YouTube, Inc., et al*., Case No. 1:07-cv-03532 (LLS).

5.    Attached hereto as Exhibit D is a true and correct copy of an excerpt from Google's Form 10-Q, filed November 8, 2006, publicly announcing that Michael Moritz had recused himself from board decisions regarding Google's acquisition of YouTube.

6.    During meet and confer sessions late last year, Plaintiffs sought a date certain from the Non-Parties as to when their document production would be ready.  This pressure, coming after the Non-Parties had asserted their objections to Plaintiffs' time instruction and in the midst of negotiations over the scope of the production, prompted the Non-Parties to begin their search, collection and review for relevant documents within their possession, custody or

1  control.  In ensuing months, Plaintiffs continued to insist that the Non-Party Investors provide a

2  specific date for the completion of their document production, not withstanding the ongoing

3  negotiations.  Attached hereto as Exhibit E is a true and correct copy of Plaintiffs' January 2,

4  2008 letter to the Non-Party Investors.

5

6        I declare under penalty of perjury under the laws of the United States that the foregoing is

7  true and correct.

8        Executed on July **21**, 2008, at Palo Alto, California.

9

10  _____

11        Michael H. Rubin

EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| VIACOM INTERNATIONAL INC., COMEDY PARTNERS, COUNTRY MUSIC TELEVISION, INC., PARAMOUNT PICTURES CORPORATION, and BLACK ENTERTAINMENT TELEVISION LLC, | ) ) ) ) ) ) | ECF Case |
| | ) | Case No. 1:07-cv-02103 (LLS) |
| Plaintiffs, | ) | (related case no. 1:07-cv-03582 (LLS)) |
| | ) | |
| v. | ) ) | |
| YOUTUBE, INC., YOUTUBE, LLC, and GOOGLE INC., | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |
| | ) | |

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Viacom International Inc., Comedy Partners, Country Music Television, Inc., Paramount Pictures Corporation, and Black Entertainment Television, LLC hereby request that Defendants YouTube Inc., YouTube, LLC, and Google Inc. respond to this First Request for Production of Documents and Electronically Stored Information within thirty (30) days of service, producing the documents described at the offices of Jenner & Block LLP, 919 Third Avenue, 37th Floor, New York, New York, in accordance with the Federal Rules of Civil Procedure, and in compliance with the Instructions and Definitions set forth below.

### Definitions

1.      These requests incorporate all definitions and rules of construction set forth in SDNY Local Civil Rule 26.3(c) & (d).

2.      The present tense shall be construed to include the past tense and the past tense shall be construed to include the present tense as required by the context to elicit all information discoverable within the broadest scope of these document requests.

3.      "Includes" and "including" shall be construed to include the phrase "without limitation."

4.      "Plaintiffs" means the plaintiffs in this action and their corporate parents or subsidiaries, and any of their present or former officers, directors, employees, other agents, and partners.

5.      "Defendants" means the defendants in this action, individually or collectively as applicable, and includes any of their present or former officers, directors, employees, other agents, corporate parents, subsidiaries, and affiliates, or other persons acting on their behalf.

6.      "YouTube" means the defendants YouTube, Inc. and YouTube, LLC, individually or collectively as applicable, and includes any of their present or former officers, directors, employees, other agents, corporate parents, subsidiaries, and affiliates, or other persons acting on their behalf.

7.      "Google" means the defendant Google, Inc. and includes any of its present or former officers, directors, employees, other agents, corporate parents, subsidiaries, and affiliates, or other persons acting on its behalf.

8.      "YouTube website" means the website located at http://www.youtube.com, or any previous or future version of that website, regardless of the name ascribed to it by Defendants.

9.    "Google Video website" means the website located at http://video.google.com, or any previous or future version of that website, regardless of the name ascribed to it by Defendants.

10.    "ActiveSharing" means the YouTube feature that allows users to share videos as described at http://www.youtube.com/activesharing_about, including all previous and subsequent versions of any similar such feature, regardless of the name ascribed to it by Defendants.

11.    "AudioSwap" means the YouTube feature that allows users to add songs to YouTube videos, as described at http://www.youtube.com/audioswap_about, including all previous and subsequent versions of any similar such feature, regardless of the name ascribed to it by Defendants.

12.    "Browse Feature" means the feature that allows a YouTube user to use the links on the left side of the Videos and Categories tabs on the YouTube website to browse through the videos available for viewing on the YouTube website, as described at http://www.google.com/support/youtube/bin/answer.py?answer=56081&topic=10513, including all previous and subsequent versions of any similar such feature, regardless of the name ascribed to it by Defendants.  The links included in the Browse Feature include: "Most Recent," "Most Viewed," "Top Rated," "Most Discussed," "Top Favorites," "Most Linked," "Most Responded," "Recently Featured," and "Watch on Mobile."

13.    "Claim Your Content Program" means the planned or implemented automatic filtering system that Google CEO Eric Schmidt discussed in an interview with John Seigenthaler on April 16, 2007, including all previous and subsequent versions of any similar such system, regardless of the name ascribed to it by Defendants.

14.    "Content Verification Program" means the program that Defendants refer to by that name at http://www.youtube.com/t/copyright_program, including all previous and subsequent versions of any similar such program, regardless of the name ascribed to it by Defendants.

15.    "Copyright Verification Tool" means the tool that Defendants refer to by that name at http://www.youtube.com/t/copyright_program, including all previous and subsequent versions of any similar such tool, regardless of the name ascribed to it by Defendants.

16.    "Director Accounts" means the accounts referred to by that name at http://www.youtube.com/blog?entry=4KWKYZN7znU, including all previous and subsequent versions of any similar such accounts, regardless of the name ascribed to them by Defendants.

17.    "Director Program" means the program referred to by that name at http://www.youtube.com/blog?entry=4KWKYZN7znU, including all previous and subsequent versions of any similar such program, regardless of the name ascribed to it by Defendants.

18.    "Guru Accounts" means the accounts referred to by that name on the YouTube website, including all previous and subsequent versions of any similar such accounts, regardless of the name ascribed to them by Defendants.

19.    "Comedian Accounts" means the accounts referred to by that name on the YouTube website, including all previous and subsequent versions of any similar such accounts, regardless of the name ascribed to them by Defendants.

20.    "Musician Accounts" means the accounts referred to by that name on the YouTube website, including all previous and subsequent versions of any similar such accounts, regardless of the name ascribed to them by Defendants.

4

21.     "Categories" means the feature and/or links labeled "Categories" on the YouTube website.  The links included in the Categories Feature include the "Autos & Vehicles," "Comedy," "Entertainment," "Film & Animation," "Gadgets & Games," "How to & DIY," "Music," "News & Politics," "People & Blogs," "Pets & Animals," "Sports," "Travel & Places" links.

22.     "DMCA" means the Digital Millennium Copyright Act.

23.     "Embedding Feature" means the YouTube feature labeled "embed" on the YouTube website, including the YouTube Embeddable Player, as described at http://www.youtube.com/sharing#link_single, including all previous and subsequent versions of any similar such feature, regardless of the name ascribed to it by Defendants.

24.     "Featured Videos" means the videos designated as featured videos on the YouTube website, including all previous or subsequent videos with a similar designation, regardless of the name ascribed to the designation by Defendants.

25.     "Flag as Inappropriate Feature" means the "Flag as Inappropriate" link that appears on the YouTube website, referred to at http://www.google.com/support/youtube/bin/answer.py?hl=ur&answer=55776, including all previous and subsequent versions of any similar such feature, regardless of the name ascribed to it by Defendants.

26.     "Friends Feature" means the feature that allows a YouTube user to share private videos with other users whom he or she has designated as "friends" or "family," as described at http://www.google.com/support/youtube/bin/answer.py?answer=57739&ctx=sibling, including all previous and subsequent versions of any similar such feature, regardless of the name ascribed to it by Defendants.

27.    "Inappropriate Content" refers to any material that Defendants have at any time considered to be inappropriate for posting on the YouTube or Google Video websites, including material that (a) violates or is claimed, asserted, or believed to violate the intellectual property laws of the United States, including the law of copyright, trademark, or trade secrets; (b) violates or may violate the privacy or publicity rights of any person; (c) is or may be obscene, sexually explicit or pornographic; (d) is or may be defamatory or libelous; (e) is or may be threatening, harassing, hateful or otherwise offensive to any person or group; (f) shows or may show dangerous or illegal acts; (g) shows or may show graphic or gratuitous violence; (h) shows or may show images that are shocking or disgusting; (i) encourages or may encourage conduct that would be considered a criminal offense, give rise to civil liability, or violate any law; (j) violates the Website Rules; or (k) is considered inappropriate by Defendants for any other reason.

28.    "Official Google Blog" means the blog at http://googleblog.blogspot.com, including all previous and subsequent versions of any similar such blog, regardless of the name ascribed to it by Defendants.

29.    "Partner Program" means YouTube's recently announced revenue-sharing program, referred to at http://www.youtube.com/partpro_about, including all previous and subsequent versions of any similar such feature, regardless of the name ascribed to it by Defendants.

30.    "Promoted Videos" means the videos designated as "promoted videos" on the YouTube website, including all previous or subsequent videos with a similar designation, regardless of the name ascribed to the designation by Defendants.

31.    "Share Feature" means a YouTube user's ability to use the "Share Video" button on the YouTube website, as described at

http://www.google.com/support/youtube/bin/answer.py?answer=57741, including all previous and subsequent versions of any similar such feature, regardless of the name ascribed to it by Defendants.

32.    "Streaming" means the feature described at http://youtube.com/streams_main, including all previous and subsequent versions of any similar such feature, regardless of the name ascribed to it by Defendants.

33.    "Takedown Request" means any request to remove or disable access to a video, whether or not submitted to the agent(s) designated by Defendants to receive such requests pursuant to 17 U.S.C. § 512(c)(3).

34.    "Terms of Use" means the terms of use for the YouTube website, located at http://youtube.com/t/terms, the Google Video Upload Terms of Service, and any prior or subsequent version of those agreements.

35.    "UGC" means user-generated content and refers to video content that is produced by an end-user.

36.    "UGC Company" means any company or corporation with substantial business operations involved in distributing or making available UGC over the Internet.

37.    "Video Awards Program" means the program described at http://www.freewebs.com/youtubevideoawards, including all previous and subsequent versions of any similar such program, regardless of the name ascribed to it by Defendants.

38.    "Video Search" means the feature that allows a user to search for videos by typing keywords into the Search box at the top of any page on the YouTube website, including all previous and subsequent versions of any similar such feature, regardless of the name ascribed to it by Defendants.

39.    "Website Rules" means the Terms of Use and any other policies, guidelines, rules or conditions that purport to govern a user's use of the YouTube or Google Video websites, including the YouTube "Community Guidelines," published at http://www.youtube.com/t/community_guidelines (also referred to on the YouTube website as the "Code of Conduct"), and the YouTube "Copyright Tips," published at http://www.youtube.com/t/howto_copyright.

40.    "YouTube Blog" means the blog located at http://www.youtube.com/blog, including all previous and subsequent versions of any similar such blog, regardless of the name ascribed to it by Defendants.

### Instructions

1.    Unless otherwise indicated, the time period covered by these requests is January 1, 2004 through the present.

2.    The parties will meet and confer regarding the format in which electronically stored information will be produced.  Electronically stored information should be produced in the format that the parties agree upon.  In the event that the parties cannot reach agreement on a format for the production of electronically stored information, Plaintiffs will specify a format and Defendants should produce electronically stored information in that format.

3.    With respect to documents and electronically stored information that you withhold on a claim of privilege, provide a statement as set forth in SDNY Local Civil Rule 26.2. All purportedly privileged documents and electronically stored information shall be held separately and retained intact pending a ruling by the Court on the claimed privilege.  If you object to production of a document or electronically stored information on the basis of a

privilege or work product claim, produce all portions of the document for which you do not claim privilege or work product.

4.    If you object to or otherwise decline to answer any portion or aspect of a request for production, provide all information requested by the remainder of the request. If you object to a request for production for the reason that it is too broad, provide all information that you concede is relevant. If you object to a request for production on the ground that to provide an answer would constitute an undue burden, provide all requested information that can be supplied without undertaking the alleged undue burden. If you are providing less than a complete response to any request, your written response should clearly indicate any limitation on your production.

5.    These requests require you to produce all documents and electronically stored information in your "possession, custody, or control" within the broadest meaning of that phrase permitted by the Federal Rules of Civil Procedure, including documents and electronically stored information in the possession, custody, or control of your employees, agents, brokers, representatives, subsidiaries, attorneys, accountants, or any other person acting or purporting to act on your behalf or under your direction or control. If documents and electronically stored information called for in any request cannot be produced in full after exercising due diligence to secure them, you should so state and specify why the requested documents or information cannot be produced.

6.    Documents and electronically stored information sought in this request include information currently or previously within your possession, custody, or control, as well as information which comes into your possession, custody, or control subsequent to service hereof. If any document or electronically stored information responsive to a request has been lost or

destroyed, describe the content of the document or information, the location of any copies of the document or information, the date the document or information was lost or destroyed, and the name of the person who ordered or authorized the destruction, and provide any documents and electronically stored information existing at the time of such loss or destruction setting forth or concerning any policy or procedure then in effect for destruction or retention of documents and electronically stored information.

7.      If, in answering any of the requests, any ambiguity in construing either the request or a definition or instruction relevant to the inquiry contained within the request is encountered, identify the matter deemed ambiguous and set forth the construction chosen or used in responding to the request.

8.      Each request is to be answered separately and as completely as possible. Each paragraph and subparagraph hereof and the definitions herein are to be construed independently, and not by or with reference to any other paragraph or subparagraph or definition herein for purposes of limiting the scope of any particular request or the subject matter thereof.

9.      The fact that investigation is continuing or that discovery is not complete shall not be used as an excuse for failure to respond to each request based on the knowledge and information currently available.

10.      Where responsive documents or electronically stored information are partly or wholly in a language other than English, state whether any translation of the non-English language information exists and, if so, provide the non-English information and its English translation.

11.      Documents and electronically stored information from any single file should be produced in the same order as they were found in such file.

10

12.     Each request that seeks documents and electronically stored information concerning communications to, from, or within a business or a corporate entity, is hereby designated to demand, and should be construed to include, all communications by and between representatives, employees, agents, brokers, and servants of the business or corporate entity.

13.     These requests are deemed to be continuing in nature, and in the event that you become aware of or acquire possession, custody or control of additional responsive documents or electronically stored information, you are requested promptly to inform counsel for Plaintiffs and produce such additional information for inspection and copying.

14.     When any request calls for the production of any portion of any document, the entire document containing any such portion must be produced.

**Requests for Production of Documents and Electronically Stored Information**

1.     Documents and electronically stored information sufficient to describe in detail the design and operation of the entire YouTube website, including every feature thereof, whether or not the feature is used by or visible to users of the YouTube website.

2.     All versions of all code sufficient to recreate all features of the YouTube website, whether past, present, or contemplated.

3.     Each document and all electronically stored information concerning any process, procedure or technology applied to videos uploaded to the YouTube website before they are available for viewing by users, including the procedures, processes, and technology used to transcode videos and any use of Adobe Remixer.

4.     Each document and all electronically stored information concerning Defendants' review or monitoring of videos uploaded to the YouTube or Google Video websites, whether such review or monitoring is by human, electronic or any other means, and whether or not such

review or monitoring has been implemented.  This request includes review or monitoring of

videos for any purpose, including in connection with advertising or the use of Google AdWords

or Google AdSense, and review for the purpose of identifying, restricting or disabling access to,

or removing from the YouTube or Google Video websites any Inappropriate Content, including

material identified by YouTube or Google Video users as inappropriate using the Flag as

Inappropriate Feature, and including any review by employees or agents of Defendants

colloquially referred to as the "porn patrol."  This request also includes review or monitoring

videos at any time, including (a) before or after videos are made available for viewing on the

YouTube or Google Video websites; (b) before or after videos are indexed; (c) before or after

videos are made available for viewing through the Browse Feature, Friends Feature, Share

Feature, Streaming, or any other feature of YouTube or Google Video; (d) before or after videos

are streamed to third parties (such as Apple); (e) before or after videos are designated as Featured

Videos or Promoted Videos; and (f) before or after videos are included in the Partner Program.

This request further includes each document and all electronically stored information concerning

any operational or design feature, whether considered, adopted, or rejected, to review or monitor

content posted on the YouTube or Google Video websites for Inappropriate Content, and/or to

identify, restrict, or disable access to such content.

     5.    Each document and all electronically stored information concerning any internal

or third-party assessment, report, analysis or discussion of the costs, benefits, or feasibility of

conducting human, electronic, or automated review of videos either before or after they are made

available for viewing on the YouTube or Google Video websites.

     6.    Each document and all electronically stored information concerning Defendants'

policies, practices and processes for removing or making inaccessible, for any reason, videos

available on the YouTube and Google Video websites, including any technical steps taken by Defendants to remove videos or to restrict or disable access to videos.

7.     All videos that have been the subject of Takedown Requests, including (a) the original file uploaded by the user, (b) the transcoded file, (c) all metadata, (d) username of uploader; (e) video title; (f) video length; (g) time stamp the video was uploaded; (h) the URL where the video is located; (i) all tags supplied by the user; (j) all tags supplied by YouTube or Google; (k) embed code; (l) number of times the video has been embedded on third-party sites; (m) all URLs to which the video has been embedded; (n) video ratings; (o) number of views and the times of those views; (p) all comments; (q) number of times "favorited" by users; (r) whether the video appeared as a Featured Video, "pick of the day," or was in any way referenced within the links in YouTube's Browse Feature, including the "Top Favorites," "Most Linked," and "Most Discussed" links, and if so when, for how long, and how it became a Featured Video, pick of the day, or in any way referenced within the links in YouTube's Browse Feature; (s) any flags as inappropriate, and if so, the responsive steps that were taken; (t) the number of page hits for each video and the times of those page hits; (u) all originating information (including the http referer) for each page hit; (v) the number of unique visitors for each video; (w) if embedded on third-party sites, the number and times of views, number and times of page hits, originating information (including the http referer) for each page hit, and number of unique visitors on each third-party site.

8.     All videos uploaded to the YouTube and Google Video websites and made available for viewing, whether or not subsequently removed, including (a) the original file uploaded by the user, (b) the transcoded file, (c) all metadata, (d) username of uploader; (e) video title; (f) video length; (g) time stamp the video was uploaded; (h) the URL where the video

is located; (i) all tags supplied by the user; (j) all tags supplied by YouTube or Google; (k) embed code; (l) number of times the video has been embedded on third-party sites; (m) all URLs to which the video has been embedded; (n) video ratings; (o) number of views and the times of those views; (p) all comments; (q) number of times "favorited" by users; (r) whether the video appeared as a Featured Video, "pick of the day," or was in any way referenced within the links in YouTube's Browse Feature, including the "Top Favorites," "Most Linked," and "Most Discussed" links, and if so when, for how long, and how it became a Featured Video, pick of the day, or in any way referenced within the links in YouTube's Browse Feature; (s) any flags as inappropriate, and if so, the responsive steps that were taken; (t) the number of page hits for each video and the times of those page hits; (u) all originating information (including the http referer) for each page hit; (v) the number of unique visitors for each video; (w) if embedded on third-party sites, the number and times of views, number and times of page hits, originating information (including the http referer) for each page hit, and number of unique visitors on each third-party site.  Plaintiffs are willing to discuss narrowing this request to samples of uploaded videos.

9.     In their entirety, all databases, repositories, or other enterprise data collected or used by Defendants to collect, maintain, or otherwise store any of the following information about videos that have been uploaded to the YouTube and Google Video websites: (a) username of uploader; (b) video title; (c) video length; (d) time stamp the video was uploaded; (e) the URL where the video is located; (f) all tags supplied by the user; (g) all tags supplied by YouTube or Google; (h) embed code; (i) number of times the video has been embedded on third-party sites; (j) all URLs to which the video has been embedded; (k) video ratings; (l) number of views and the times of those views; (m) all comments; (n) number of times "favorited" by users; (o)

14

whether the video appeared as a Featured Video, "pick of the day," or was in any way referenced within the links in YouTube's Browse Feature, including the "Top Favorites," "Most Linked," and "Most Discussed" links, and if so when, for how long, and how it became a Featured Video, pick of the day, or in any way referenced within the links in YouTube's Browse Feature; (p) any flags as inappropriate, and if so, the responsive steps that were taken; (q) the number of page hits for each video and the times of those page hits; (r) all originating information (including the http referer) for each page hit; (s) the number of unique visitors for each video; (t) if embedded on third-party sites, the number and times of views, number and times of page hits, originating information (including the http referer) for each page hit, and number of unique visitors on each third-party site.

10. Each other document and all other electronically stored information concerning the databases, repositories, or other enterprise data referenced in document request no. 9, including any documents summarizing, reporting, or analyzing any such data in whole or in part.

11. Documents and electronically stored information sufficient to reflect, for each video uploaded to the YouTube and Google Video websites, (a) how many copies are made, stored and maintained, (b) by what means and in which formats, (c) the locations within the YouTube infrastructure where each such copy resides, (d) what each such copy is used for, including but not limited to use for the making of further copies, adaptations, distribution, display, transmission or performance, whether or not publicly accessible, and (e) the disposition and retention of each such copy once Defendants have knowledge or notice that it contains infringing or allegedly infringing material.

12.     Documents and electronically stored information sufficient to identify all of the types of information (personal, private, proprietary, or otherwise) that Defendants collect from users of the YouTube and Google Video websites.

13.     All web server log data for the YouTube and Google Video websites collected or maintained by Defendants, or reported by Defendants to any person or entity working on their behalf, including Google Analytics.

14.     Each document and all electronically stored information concerning the development, business strategy, monetization, technology, operation, functionality, and any proposed or executed modification concerning the following features or programs associated with YouTube:  (a) Audio Swap Program; (b) Browse Feature; (c) Director, Guru, Comedian and Musician Programs and/or Accounts; (d) Embedding Feature; (e) Featured Videos, or any other selection of video content; (f) Friends Feature; (g) Partner Program; (h) Promoted Videos; (i) Share Feature; (j) Active Sharing Feature; (k) Streaming; (l) Video Awards Program; (m) Video Search Feature; and (n) Categories.

15.     Each document and all electronically stored information commenting on, analyzing, or discussing the features or programs listed in request no. 14, including any discussion of (a) Defendants' ability to ensure that the use of the features or programs complies with Defendants' Website Rules; (b) Defendants' ability to review, monitor, identify, remove, or disable access to Inappropriate Content, including infringing or potentially infringing content; (c) the effect of the features or programs on copyright owners' ability to identify and request removal of their copyrighted content, including any copyrighted works owned by Plaintiffs; and (d) Defendants' liability or potential liability for copyright infringement.

16.    Each document and all electronically stored information concerning the number of users and the number and identity of videos viewed using the Share, Active Sharing, Embedding or Streaming Features.

17.    Each document and all electronically stored information concerning the development, technology, operation, functionality, and any proposed or executed modification of Defendants' indexing of videos uploaded to the YouTube website.

18.    Each document and all electronically stored information concerning Defendants' policies, practices, processes and technology concerning the creation of thumbnails of videos hosted on the YouTube website, including thumbnails used in conjunction with YouTube's Video Search or Browse Functions, and thumbnails displayed on the YouTube homepage.

19.    Each document and all electronically stored information concerning any changes that have been made to the technology, operation, design or functionality of the YouTube website since the YouTube website was first launched, including any changes made to the YouTube website since Google's acquisition of YouTube was first announced (for example, but without limiting the foregoing, YouTube's April 20, 2007 database architecture changes).

20.    Each document and all electronically stored information concerning any limitation Defendants have placed or have considered placing on the duration of videos that a user is permitted to upload to the YouTube and Google Video websites.

21.    Each document and all electronically stored information concerning communications relating to the display of information on the YouTube website that in any way identifies third-party sites linking to specific videos, including the decision to stop displaying such information on the YouTube website.

22.     Each document and all electronically stored information concerning the development, technology, and operations concerning any interaction between the search, advertising, toolbar, storage and other features and functionalities of YouTube and the search, advertising, toolbar, storage and other features and functionalities of Google, including the actual or future financial value or monetization of any such interaction.  This request includes the integration of YouTube search results into Google Universal Search or Google Video search results.   This request also includes any discussions, negotiations or agreements between Google and YouTube regarding the actual or potential interaction between the search and other features of the YouTube website and the search and other features of the Google Video website.

23.     Each document and all electronically stored information reflecting any differences in functionality between YouTube's Video Search Feature prior to YouTube's acquisition by Google and YouTube's current Video Search Feature or any planned Video Search Feature. This request includes the integration of YouTube search results into Google Universal Search or Google Video search results.

24.     Each document and all electronically stored information concerning the development, technology, operation, functionality, and any proposed or executed modification of the function(s) that enable users to provide a title, description, and tags for videos uploaded to the YouTube website.  This request includes any document commenting on, analyzing, discussing or otherwise referring to (a) any limitations Defendants place on the titles, descriptions or tags that may be used to refer to a video; (b) any electronic, human or other monitoring or review of titles, descriptions, or tags carried out by Defendants; (c) any modifications to titles, descriptions, or tags made by Defendants; (d) Defendants' enforcement of, or attempt to enforce, the Website Rules with respect to titles, descriptions, or tags; (e)

Defendants' actual use of, or ability to use, titles, tags or descriptions to review, monitor, identify and remove Inappropriate Content, including infringing or potentially infringing content; (f) copyright owners' actual use of, or ability to use, titles, tags or descriptions to identify and request the takedown of their copyrighted content, including any copyrighted works owned by Plaintiffs; and (g) YouTube website users' use of misspelling, code-words, non-Latin alphabet characters or other manipulation of titles, descriptions and tags to refer to infringing or potentially infringing content, or other types of Inappropriate Content.

25.    Each document and all electronically stored information concerning the downloading or copying of videos from the YouTube and Google Video websites by users, and/or the distribution of software that enables such downloading or copying, and any measures taken by Defendants to prevent, hinder, or facilitate such downloading or copying, or the distribution of such software.

26.    Each document and all electronically stored information concerning any actual or proposed business models, business plans, strategic plans, budgets, or forecasts for YouTube or Google Video, whether developed by Defendants or a third party, including any strategic options for YouTube or Google Video, including the sale of YouTube to Google or any other entity. This request is not limited by Instruction No. 1 and thus covers all responsive documents and electronically stored information whether created before, on, or after January 1, 2004.

27.    Each document and all electronically stored information concerning any actual or potential investment in, or financing provided to, YouTube including (a) all communications with potential or actual investors in, or providers of financing to, YouTube, including any representations made concerning YouTube's business model; (b) all documents prepared for or presented to actual or potential investors in, or providers of financing to, YouTube, including any

representations made concerning YouTube's business model; and (c) all documents received from actual or potential investors in, or providers of financing to YouTube; and (d) all documents analyzing or assessing investments in or the financing of YouTube, whether prepared by Defendants or a third party.

28.     Documents sufficient to identify all past or present shareholders or holders of a beneficial interest in YouTube.

29.     Each document and all electronically stored information concerning YouTube's or Google Video's past, present, or future, and actual or projected (a) advertising and other revenues; (b) profits; (c) operational and other costs; (d) sources of funding; (e) market share, whether expressed as share of number of online videos, share of Internet traffic, share of number of viewers or visitors, or any other measure of market share; (f) number of users or visitors; (g) number of daily page hits; (h) number of page views; (i) number of users; or (j) number of unique visitors.  This request is not limited by Instruction No. 1 and thus covers all responsive documents and electronically stored information whether created before, on, or after January 1, 2004.

30.     Each document and all electronically stored information concerning the strategies, business plans, growth, market share, or financial results of any competitors of YouTube or Google Video, as well as any competitors' use of any copyright protection technologies or any competitors' actual or potential review, monitoring, identification of, or removal of infringing or potentially infringing content, or any other Inappropriate Content.

31.     Each document and all electronically stored information concerning any communications, negotiations or discussions between Defendants and Plaintiffs, or between Defendants any other entity, relating to potential licenses or other agreements for Defendants to

display, perform or otherwise use Plaintiffs' or any other entity's copyrighted content on the YouTube or Google Video websites. This request includes any offer by Defendants, as part of the negotiations, to employ audio fingerprinting, video fingerprinting, filtering, hashing, or any other copyright protection technology, or to remove or disable access to infringing or potentially infringing copies of Plaintiffs' or any entity's copyrighted works from the YouTube or Google Video websites. This request includes negotiations between Defendants and the following entities: Apple, Inc., the BBC, CBS, Inc., Digital Music Group, Inc., EMI Music, Federation Francaise de Tennis (the French tennis federation), the Football Association Premiere League, Hearst-Argyle Television, Ligue de Football Professionel (the French soccer league), Major League Soccer, the National Basketball League, the National Hockey League, NBC, Sony BMG Music Entertainment, the Sundance Channel, Universal Music Group, VH1, and Warner Music Group.

32.    Each document and all electronically stored information concerning any revenues, profits, or other financial benefit earned, or cost incurred, by Defendants in connection with any licensing or other agreement that authorizes Defendants to display, perform or otherwise use an entity's copyrighted content on the YouTube or Google Video websites.

33.    For any entity that eventually entered into a license or other agreement with Defendants to copy, publicly perform, display or otherwise exploit its content, including all entities referenced in request no. 31, documents sufficient to identify the number of videos that were uploaded to the YouTube or Google Video websites that contained content owned or claimed by such entity, as well as the number and times of views of those videos, both prior to after such entity entered into the license or other agreement with Defendants, including authorized and unauthorized content.

21

34.     Each document and all electronically stored information concerning any actual or potential revenue-sharing between YouTube and its users, including the Partner Program.

35.     Each document and all electronically stored information concerning Google's acquisition of YouTube, including any reports, analyses or assessments carried out by Google, YouTube, investment banks, or any other person, and including any communications between or among Google, YouTube and any investor in YouTube or Google (*e.g.*, Sequoia Capital, Artis Capital Management Inc., TriplePoint Capital LLC).

36.     Each document and all electronically stored information concerning Google's acquisition of YouTube that refers to actual or proposed indemnification or an actual or proposed litigation reserve in relation to copyright infringement lawsuits that might be brought against Defendants in relation to the YouTube website.

37.     Each document and all electronically stored information concerning any person or entity that considered acquiring or merging with YouTube, including persons or entities that entered into negotiations with YouTube regarding a potential acquisition of or merger with YouTube.

38.     Each document and all electronically stored information concerning any other UGC Company that Google has considered acquiring or merging with, including UGC Companies that entered into negotiations with Google regarding a potential acquisition by or merger with Google.

39.     Each document and all electronically stored information concerning Google's plans and strategies for making UGC or other video content available for viewing online, and any efforts Google has taken or considered taking in order to make UGC or other video content available for viewing online.

40.     Each document and all electronically stored information concerning the types of advertising that Defendants' have offered or have considered offering in connection with the YouTube or Google Video website, including CPC advertising, CPM advertising, advertising targeted to particular video clips, and any other type of advertising, and including where and when each type of advertising is displayed and any actual or potential revenue or other financial benefit associated with each type of advertising. This request shall include banner or other advertising appearing on any page throughout the YouTube website. This request is not limited by Instruction No. 1 and thus covers all responsive documents and electronically stored information whether created before, on, or after January 1, 2004.

41.     Each document and all electronically stored information concerning plans, discussions, strategies or proposals to implement advertising of any kind or any other form of revenue generation concerning the YouTube or Google Video websites, regardless of whether the advertising or other form of revenue generation has been adopted or used on the YouTube or Google Video websites. This request is not limited by Instruction No. 1 and thus covers all responsive documents and electronically stored information whether created before, on, or after January 1, 2004.

42.     Each document and all electronically stored information concerning communications with advertising companies that provide or have considered providing advertising services to YouTube or Google Video, including 24/7 Real Media, Inc., Adbrite, Inc., DoubleClick, Fastclick, Inc., Google, Inc., and Tribal Fusion, or communications with actual or potential advertisers on the YouTube or Google Video websites. This request includes any communications regarding the presence of Inappropriate Content, including infringing or potentially infringing content, on the YouTube or Google Video websites.

23

43.     Each document and all electronically stored information concerning Defendants'
advertising policies, procedures, or practices, including any such policies, procedures or
practices concerning the human or electronic review or monitoring of advertisements.

44.     Each document and all electronically stored information concerning any
advertising or promotional opportunity offered to third parties in relation to the YouTube
website, whether or not the advertising or promotional opportunity was accepted, including
corporate sponsorships offered to Cingular Wireless or any other entity, and any type of co-
branding.

45.     Each document and all electronically stored information concerning the actual or
potential use of Google AdSense or Google AdWords in connection with the YouTube website,
including any revenues, profits or financial benefit earned, or financial expenditure made, by
Defendants or any third party as a result of the use of Google Adsense or Google AdWords in
connection with the YouTube website.

46.     Each document and all electronically stored information concerning any reports or
analyses of advertising or marketing activities concerning the YouTube or Google Video
websites, including the effectiveness of such advertising or marketing activities.

47.     Each document and all electronically stored information concerning Google's
acquisition of DoubleClick.

48.     Each document and all electronically stored information concerning viral or
stealth marketing by any entity on the YouTube website.

49.     Each document and all electronically stored information concerning the actual or
potential presence of Inappropriate Content, including infringing or potentially infringing
content, on the YouTube or Google Video websites, including any financial or other benefit

(*e.g.*, any increase in revenue, number of users, or traffic) Defendants derive or could derive from the actual or potential presence of such content. This request includes documents and electronically stored information concerning the actual or potential presence of content that may qualify as fair use under the intellectual property laws of the United States and any discussions or communications by or among Defendants and any third parties. This request is not limited by Instruction No. 1 and thus covers all responsive documents and electronically stored information whether created before, on, or after January 1, 2004.

50.    Each document and all electronically stored information concerning "red flags" indicating copyright infringement, or Defendants' interpretation of facts or circumstances from which infringing activity is apparent, on the YouTube, Google Video, or any other website.

51.    Each document and all electronically stored information concerning any actions taken by Defendants' employees or agents to upload videos to YouTube. This request does not include the uploading of videos by YouTube users who are not employees or agents of Defendants.

52.    Each document and all electronically stored information concerning the actual or potential presence of Inappropriate Content, including infringing or potentially infringing content, on any website other than the YouTube or Google Video websites, including any efforts to review, monitor, reduce or limit the presence of such content.

53.    Each document and all electronically stored information concerning the applicability of the DMCA to Defendants' websites, Plaintiffs' websites, or any third party website.

54. Each document and all electronically stored information concerning any actions that Defendants have taken or have contemplated taking to identify, remove, disable access to, or prevent the upload of Inappropriate Content.

55. Each document and all electronically stored information concerning the Website Rules, including any actions taken by Defendants to identify violations of, or to enforce, their Website Rules. This request includes any internal communications and communications with users or other third parties regarding Defendants' Website Rules.

56. Each document and all electronically stored information concerning any training of Defendants' employees or agents in relation to the YouTube or Google Video websites. This request includes all materials used in or prepared for such training, including manuals, presentations and instructional videos.

57. Each document and all electronically stored information concerning Defendants' actual or contemplated efforts to ensure that YouTube and Google Video comply with the "repeat infringer" provision of the DMCA (17 U.S.C. § 512(i)(1)(A)), including (a) any policies, customs, practices, procedures, instructions, or rules concerning "repeat infringers," (b) any efforts Defendants have made or considered making to communicate their policies regarding "repeat infringers" to their users; and (c) any efforts Defendants have made or considered making to enforce those policies, including by terminating repeat infringers. This request is not limited by Instruction No. 1 and thus covers all responsive documents and electronically stored information whether created before, on, or after January 1, 2004.

58. Each document and all electronically stored information that identifies the usernames, names, contact information, and date of account termination for all YouTube and

Google Video website users whose user accounts have been terminated pursuant to Defendants'
repeat infringer policies.

59.    Each document and all electronically stored information concerning all Takedown
Requests, all complaints regarding the presence of infringing or potentially infringing content on
the YouTube or Google Video websites, and all complaints regarding any action taken by
Defendants in response to Takedown Requests, including all internal communications and
communications with users or third parties.

60.    Each document and all electronically stored information concerning Defendants'
policies, practices, procedures, and processes concerning Takedown Requests, including the
policies, practices, procedures and processes (a) for determining when a Takedown Request
"substantially complies" with the requirements of 17 U.S.C. § 512(c)(3)(A); (b) for removing or
disabling access to videos that have been the subject of a Takedown Request or have otherwise
been identified as infringing or potentially infringing; and (c) for implementing or responding to
Takedown Requests containing representative lists of infringing or potentially infringing content.

61.    Each document and all electronically stored information concerning the upload or
attempted upload to the YouTube or Google Video websites of videos that are identical or
similar to videos that have been the subject of a Takedown Request, including any action taken
by Defendants to identify, remove, disable access to, or prevent the upload of such videos.

62.    Each document and all electronically stored information concerning any actions
Defendants have taken, have considered taking, or plan to take in order to identify and remove or
otherwise disable access to Plaintiffs' copyrighted content on the YouTube or Google Video
websites.

63.    All documents concerning the extent to which Defendants have changed any policies, procedures or processes concerning the availability of infringing content on the YouTube or Google Video websites, or deployed any additional resources to prevent or mitigate infringement on the YouTube or Google Video websites, since the filing of any action against Defendants for copyright infringement, including but not limited to this action, the Tur Action, and the Football Association Premiere League Action, as well as the effectiveness of those efforts and all internal and external communications relating thereto.

64.    Each document and all electronically stored information concerning any existing or proposed copyright protection technology or mechanism, including human, electronic, or automated review, watermarking, audio fingerprinting, video fingerprinting, filtering, and hashing.  This request includes all internal communications and communications with third parties (*e.g.*, Audible Magic and Fortium) regarding copyright protection technologies and mechanisms.  This request is not limited by Instruction No. 1 and thus covers all responsive documents and electronically stored information whether created before, on, or after January 1, 2004.

65.    Each document and all electronically stored information concerning the effectiveness of any existing or proposed copyright protection technology or mechanism, including human, electronic, or automated review, watermarking, audio fingerprinting, video fingerprinting, filtering and hashing.

66.    Each document and all electronically stored information concerning the Content Verification Program, Copyright Verification Tool, and Claim Your Content Program, including (a) the development, technology, operation, functionality, and any proposed or executed modification of the Content Verification Program, Copyright Verification Tool, or Claim Your

Content Program; (b) any agreements with participants or third parties in connection with the Content Verification Program, Copyright Verification Tool, or Claim Your Content Program; (c) any training or explanatory materials concerning the Content Verification Program, Copyright Verification Tool, or Claim Your Content Program; and (d) any discussions, reports, or assessments of any effect the Content Verification Program, Content Verification Tool, or Claim Your Content Program might have on the presence of infringing or potentially infringing material on the YouTube website, or on Defendants' potential liability for copyright infringement.

67.    Each document and all electronically stored information concerning any tests of the Content Verification Program, Content Verification Tool, or Claim Your Content Program, including tests carried out in cooperation with Time Warner Inc., Walt Disney Co., and Plaintiffs.  This request includes all test protocols, all test results, and all internal communications and communications with test participants and third parties regarding the tests.

68.    Each document and all electronically stored information concerning any communications between Defendants and insurance companies regarding liability coverage for copyright infringement.

69.    Each document and all electronically stored information concerning any statement to the public or press by Defendants relating in any way to YouTube, Google Video, copyright protection or the DMCA, including (a) Google's negotiations with YouTube and its ultimate acquisition of YouTube; (b) the presence of Inappropriate Content on the YouTube or Google Video websites; (c) copyright protection technologies or mechanisms, including audio fingerprinting, video fingerprinting, filtering and hashing; (d) the Content Verification Program or Copyright Verification Tool; (e) the Claim Your Content Program; (f) the Audio Swap

Feature; (g) the Browse Feature; (h) the Director Program and Director Accounts; (i) the

Embedding Feature; (j) the Featured Videos Program; (k) the Friends Feature; (l) the Partner

Program; (m) the Share Feature; (n) the ActiveShare Feature; (o) Streaming; (p) the Video

Awards Program; (q) the Video Search Feature; and (r) Categories.

70.    Each document and all electronically stored information concerning any lobbying

by Defendants concerning YouTube, Google Video, or the DMCA.

71.    Each document and all electronically stored information concerning any blog

posting by Defendants, including any drafts thereof, relating in any way to the allegations in the

Complaint or to Defendants' Answer.  This request includes the YouTube Blog and the Official

Google Blog.

72.    Documents sufficient to show Defendants' corporate structure (including

relationships among and ownership of all subsidiaries of Defendants).

73.    Documents sufficient to show the employees and reporting relationships in each

department in YouTube, Google Video, and any department of Google that has any involvement

in, oversight of, or management responsibility for any aspect of YouTube or Google Video.

74.    All communications with any person that is or was involved in a lawsuit against

Plaintiffs (including MOVEON.ORG) concerning that person's lawsuit or Plaintiffs.

75.    All communications between Plaintiffs and Defendants.

76.    Each document and all electronically stored information concerning Plaintiffs.

77.    All communications with third parties concerning Plaintiffs, this lawsuit,

copyright protection, or the DMCA.

78.     Each document and all electronically stored information that Defendants intend to rely on in this case or that serves as the basis for any contention or statement in Defendants' Answer.

79.     Each document and all electronically stored information concerning any defenses that Defendants assert in this action, including all defenses set forth in Defendants' Answer.

July 2, 2007

Donald B. Verrilli, Jr.
William M. Hohengarten
Amy L. Tenney
Scott B. Wilkens
Luke C. Platzer
Sharmila Sohoni
JENNER & BLOCK LLP
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, DC  20005-3823
Telephone (202) 639-6000
Facsimile (202) 639-6066

Susan J. Kohlmann
Peter H. Hanna
Matthew W. Alsdorf
Jenner & Block LLP
919 Third Avenue
37th Floor
New York, NY 10022
Telephone (212) 891-1690
Facsimile (212) 891-1699

*Attorneys for Plaintiffs*

TO:

David H. Kramer
Bart E. Volkmer
Maura Lea Rees
Caroline Wilson
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA 94304
Telephone (650) 493 9300
Facsimile (650) 493-6811

Jonathan M. Jacobson
Tonia Maria Ouellette Klausner
WILSON SONSINI GOODRICH & ROSATI
12 East 49th Street
30th Flr.
New York, NY 10017
Telephone (212) 999-5858
Facsimile (212) 999-5899

Philip S. Beck
Mark S. Ouweleen
Shayna Susanne Cook
Alison G. Wheeler
Carrie A. Jablonski
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
Courthouse Place
54 W. Hubbard St.
Suite 300
Chicago, IL 60610
Telephone (312) 494-4465
Facsimile (312) 494-4440

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Plaintiffs' First Set of Requests for Production of Documents and Electronically Stored Information to Defendants was served on this 2d day of July, 2007, on the following by electronic mail pursuant to an agreement of the parties under Fed. R. Civ. P. 5(b)(2)(D):

David H. Kramer
dkramer@wsgr.com

Bart E. Volkmer
bvolkmer@wsgr.com

Maura Lea Rees
mrees@wsgr.com

Caroline Wilson
cwilson@wsgr.com

Jonathan M. Jacobson
jjacobson@wsgr.com

Tonia Maria Ouellette Klausner
tklausner@wsgr.com

Mark Shawn Ouweleen
mark.ouweleen@bartlit-beck.com

Shayna Susanne Cook
shayna.cook@bartlit-beck.com

Alison G. Wheeler
alison.wheeler@bartlit-beck.com

Carrie A. Jablonski
carrie.jablonski@bartlit-beck.com

Susan J. Kohlmann

EXHIBIT B

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE FOOTBALL ASSOCIATION PREMIER   :
LEAGUE LIMITED and BOURNE CO., on   :
behalf of themselves and all others similarly   :
situated,   :

        :   07 Civ. 3582 (LLS)
     Plaintiffs,   :   (related case no. 07 Civ. 2103 (LLS))
        :
     v.      :   ECF Case
        :
YOUTUBE, INC., YOUTUBE, LLC and   :
GOOGLE, INC.,       :
        :
     Defendants.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION FROM DEFENDANTS YOUTUBE, INC., YOUTUBE, LLC, AND GOOGLE, INC.

| PROSKAUER ROSE LLP | BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP |
|---|---|
| 1585 Broadway<br>New York, NY 10036-8299<br>Phone: 212-969-3000<br>Fax: 212-969-2900 | 1285 Avenue of the Americas<br>New York, NY 10019<br>Phone: 212-554-1400<br>Fax: 212-554-1444 |
| *Attorneys for Lead Plaintiffs Premier League and Bourne and for the Prospective Class* ||

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs The Football Association Premier League Limited and Bourne Co., on behalf of themselves and all others similarly situated, hereby request that Defendants YouTube, Inc., YouTube, LLC, and Google, Inc. respond to this First Request for Production of Documents and Electronically Stored Information (the "Requests") within thirty (30) days of service, producing the documents described at the offices of Proskauer Rose LLP, 1585 Broadway, New York, New York 10036, in accordance with the Federal Rules of Civil Procedure, and in compliance with the Instructions and Definitions set forth below.

At the Rule 26(f) conference between the parties to this action and to the related action filed by Viacom International, Inc. and others against the Defendants on March 13, 2007, case no. 07 Civ. 2103 (the "Viacom Action"), Defendants made a request that Plaintiffs in this and the Viacom Action attempt to minimize any non-identical overlap between discovery requests. Accordingly, we coordinated over a series of several days with the plaintiffs in the Viacom Action in order to minimize slight variations between these Requests and Plaintiffs' First Request For Production Of Documents And Electronically Stored Information served by plaintiffs in the Viacom Action (the "Viacom Requests"); we note below where any of the instructions, definitions, and document requests differ between these Requests and the Viacom Requests.

## Definitions

The following definitions, which shall apply to these Requests, are identical to the Definitions contained in the Viacom Requests, except for the definitions of the following terms: "Plaintiffs," "YouTube Website," and "Inappropriate Content."

1.      These requests incorporate all definitions and rules of construction set forth in SDNY Local Civil Rule 26.3(c) & (d).

2.      The present tense shall be construed to include the past tense and the past tense shall be construed to include the present tense as required by the context to elicit all information discoverable within the broadest scope of these document requests.

3.      "Includes" and "including" shall be construed to include the phrase "without limitation."

4.      "Plaintiffs" means the plaintiffs in this action and the plaintiffs in the action filed by Viacom International, Inc. and others against the Defendants on March 13, 2007, individually or collectively as applicable, and their corporate parents or subsidiaries, and any of their present or former officers, directors, employees, other agents, and partners.

5.      "Defendants" means the defendants in this action, individually or collectively as applicable, and includes any of their present or former officers, directors, employees, other agents, corporate parents, subsidiaries, and affiliates, or other persons acting on their behalf.

6.      "YouTube" means the defendants YouTube, Inc. and YouTube, LLC, individually or collectively as applicable, and includes any of their present or former officers, directors, employees, other agents, corporate parents, subsidiaries, and affiliates, or other persons acting on their behalf.

7.      "Google" means the defendant Google, Inc. and includes any of its present or former officers, directors, employees, other agents, corporate parents, subsidiaries, and affiliates, or other persons acting on its behalf.

8.      "YouTube website" means the website located at http://www.youtube.com, including any local or country-specific versions of that website, such as, but not limited to, the

websites located at www.youtube.com.br, www.youtube.fr, www.youtube.ie, it.youtube.com, www.youtube.jp, www.youtube.nl, www.youtube.pl, www.youtube.es, and www.youtube.co.uk, or any previous or future version of such websites, regardless of the name ascribed to it by Defendants.

9.      "Google Video website" means the website located at http://video.google.com, or any previous or future version of that website, regardless of the name ascribed to it by Defendants.

10.     "ActiveSharing" means the YouTube feature that allows users to share videos as described at http://www.youtube.com/activesharing_about, including all previous and subsequent versions of any similar such feature, regardless of the name ascribed to it by Defendants.

11.     "AudioSwap" means the YouTube feature that allows users to add songs to YouTube videos, as described at http://www.youtube.com/audioswap_about, including all previous and subsequent versions of any similar such feature, regardless of the name ascribed to it by Defendants.

12.     "Browse Feature" means the feature that allows a YouTube user to use the links on the left side of the Videos and Categories tabs on the YouTube website to browse through the videos available for viewing on the YouTube website, as described at http://www.google.com/support/youtube/bin/answer.py?answer=56081&topic=10513, including all previous and subsequent versions of any similar such feature, regardless of the name ascribed to it by Defendants.  The links included in the Browse Feature include: "Most Recent," "Most Viewed," "Top Rated," "Most Discussed," "Top Favorites," "Most Linked," "Most Responded," "Recently Featured," and "Watch on Mobile."

13.    "Claim Your Content Program" means the planned or implemented automatic filtering system that Google CEO Eric Schmidt discussed in an interview with John Seigenthaler on April 16, 2007, including all previous and subsequent versions of any similar such system, regardless of the name ascribed to it by Defendants.

14.    "Content Verification Program" means the program that Defendants refer to by that name at http://www.youtube.com/t/copyright_program, including all previous and subsequent versions of any similar such program, regardless of the name ascribed to it by Defendants.

15.    "Copyright Verification Tool" means the tool that Defendants refer to by that name at http://www.youtube.com/t/copyright_program, including all previous and subsequent versions of any similar such tool, regardless of the name ascribed to it by Defendants.

16.    "Director Accounts" means the accounts referred to by that name at http://www.youtube.com/blog?entry=4KWKYZN7znU, including all previous and subsequent versions of any similar such accounts, regardless of the name ascribed to them by Defendants.

17.    "Director Program" means the program referred to by that name at http://www.youtube.com/blog?entry=4KWKYZN7znU, including all previous and subsequent versions of any similar such program, regardless of the name ascribed to it by Defendants.

18.    "Guru Accounts" means the accounts referred to by that name on the YouTube website, including all previous and subsequent versions of any similar such accounts, regardless of the name ascribed to them by Defendants.

19.    "Comedian Accounts" means the accounts referred to by that name on the YouTube website, including all previous and subsequent versions of any similar such accounts, regardless of the name ascribed to them by Defendants.

20.    "Musician Accounts" means the accounts referred to by that name on the YouTube website, including all previous and subsequent versions of any similar such accounts, regardless of the name ascribed to them by Defendants.

21.    "Categories" means the feature and/or links labeled "Categories" on the YouTube website.  The links included in the Categories Feature include the "Autos & Vehicles," "Comedy," "Entertainment," "Film & Animation," "Gadgets & Games," "How to & DIY," "Music," "News & Politics," "People & Blogs," "Pets & Animals," "Sports," "Travel & Places" links.

22.    "DMCA" means the Digital Millennium Copyright Act.

23.    "Embedding Feature" means the YouTube feature labeled "embed" on the YouTube website, including the YouTube Embeddable Player, as described at http://www.youtube.com/sharing#link_single, including all previous and subsequent versions of any similar such feature, regardless of the name ascribed to it by Defendants.

24.    "Featured Videos" means the videos designated as featured videos on the YouTube website, including all previous or subsequent videos with a similar designation, regardless of the name ascribed to the designation by Defendants.

25.    "Flag as Inappropriate Feature" means the "Flag as Inappropriate" link that appears on the YouTube website, referred to at http://www.google.com/support/youtube/bin/answer.py?hl=ur&answer=55776, including all previous and subsequent versions of any similar such feature, regardless of the name ascribed to it by Defendants.

26.    "Friends Feature" means the feature that allows a YouTube user to share private videos with other users whom he or she has designated as "friends" or "family," as described at

http://www.google.com/support/youtube/bin/answer.py?answer=57739&ctx=sibling, including all previous and subsequent versions of any similar such feature, regardless of the name ascribed to it by Defendants.

27.    "Inappropriate Content" refers to any material that Defendants have at any time considered to be inappropriate for posting on the YouTube or Google Video websites, including material that (a) violates or is claimed, asserted, or believed to violate the intellectual property laws of the United States or of any other country, including the law of copyright, trademark, or trade secrets; (b) violates or may violate the privacy or publicity rights of any person; (c) is or may be obscene, sexually explicit or pornographic; (d) is or may be defamatory or libelous; (e) is or may be threatening, harassing, hateful or otherwise offensive to any person or group; (f) shows or may show dangerous or illegal acts; (g) shows or may show graphic or gratuitous violence; (h) shows or may show images that are shocking or disgusting; (i) encourages or may encourage conduct that would be considered a criminal offense, give rise to civil liability, or violate any law; (j) violates the Website Rules; or (k) is considered inappropriate by Defendants for any other reason.

28.    "Official Google Blog" means the blog at http://googleblog.blogspot.com, including all previous and subsequent versions of any similar such blog, regardless of the name ascribed to it by Defendants.

29.    "Partner Program" means YouTube's recently announced revenue-sharing program, referred to at http://www.youtube.com/partpro_about, including all previous and subsequent versions of any similar such feature, regardless of the name ascribed to it by Defendants.

30.    "Promoted Videos" means the videos designated as "promoted videos" on the YouTube website, including all previous or subsequent videos with a similar designation, regardless of the name ascribed to the designation by Defendants.

31.    "Share Feature" means a YouTube user's ability to use the "Share Video" button on the YouTube website, as described at http://www.google.com/support/youtube/bin/answer.py?answer=57741, including all previous and subsequent versions of any similar such feature, regardless of the name ascribed to it by Defendants.

32.    "Streaming" means the feature described at http://youtube.com/streams_main, including all previous and subsequent versions of any similar such feature, regardless of the name ascribed to it by Defendants.

33.    "Takedown Request" means any request to remove or disable access to a video, whether or not submitted to the agent(s) designated by Defendants to receive such requests pursuant to 17 U.S.C. § 512(c)(3).

34.    "Terms of Use" means the terms of use for the YouTube website, located at http://youtube.com/t/terms, and the Google Video Upload Terms of Service, and any prior versions of those agreements.

35.    "UGC" means user-generated content and refers to video content that is produced by an end-user.

36.    "UGC Company" means any company or corporation with substantial business operations involved in distributing or making available UGC over the Internet.

37.    "Video Awards Program" means the program described at

http://www.freewebs.com/youtubevideoawards, including all previous and subsequent versions

of any similar such program, regardless of the name ascribed to it by Defendants.

38.    "Video Search" means the feature that allows a user to search for videos by typing

keywords into the Search box at the top of any page on the YouTube website, including all

previous and subsequent versions of any similar such feature, regardless of the name ascribed to

it by Defendants.

39.    "Website Rules" means the Terms of Use and any other policies, guidelines, rules

or conditions that purport to govern a user's use of the YouTube or Google Video websites,

including the YouTube "Community Guidelines," published at

http://www.youtube.com/t/community_guidelines (also referred to on the YouTube website as

the "Code of Conduct"), and the YouTube "Copyright Tips," published at

http://www.youtube.com/t/howto_copyright.

40.    "YouTube Blog" means the blog located at http://www.youtube.com/blog,

including all previous and subsequent versions of any similar such blog, regardless of the name

ascribed to it by Defendants.

## Instructions

The following instructions, which shall apply to these Requests, are identical to the

Instructions contained in the Viacom Requests.

1.    Unless otherwise indicated, the time period covered by these requests is January

1, 2004 through the present.

2.    The parties will meet and confer regarding the format in which electronically

stored information will be produced.  Electronically stored information should be produced in the

9

format that the parties agree upon.  In the event that the parties cannot reach agreement on a format for the production of electronically stored information, Plaintiffs will specify a format and Defendants should produce electronically stored information in that format.

3.      With respect to documents and electronically stored information that you withhold on a claim of privilege, provide a statement as set forth in SDNY Local Civil Rule 26.2. All purportedly privileged documents and electronically stored information shall be held separately and retained intact pending a ruling by the Court on the claimed privilege.  If you object to production of a document or electronically stored information on the basis of a privilege or work product claim, produce all portions of the document for which you do not claim privilege or work product.

4.      If you object to or otherwise decline to answer any portion or aspect of a request for production, provide all information requested by the remainder of the request.  If you object to a request for production for the reason that it is too broad, provide all information that you concede is relevant.  If you object to a request for production on the ground that to provide an answer would constitute an undue burden, provide all requested information that can be supplied without undertaking the alleged undue burden.  If you are providing less than a complete response to any request, your written response should clearly indicate any limitation on your production.

5.      These requests require you to produce all documents and electronically stored information in your "possession, custody, or control" within the broadest meaning of that phrase permitted by the Federal Rules of Civil Procedure, including documents and electronically stored information in the possession, custody, or control of your employees, agents, brokers, representatives, subsidiaries, attorneys, accountants, or any other person acting or purporting to

act on your behalf or under your direction or control.  If documents and electronically stored information called for in any request cannot be produced in full after exercising due diligence to secure them, you should so state and specify why the requested documents or information cannot be produced.

6.     Documents and electronically stored information sought in this request include information currently or previously within your possession, custody, or control, as well as information which comes into your possession, custody, or control subsequent to service hereof. If any document or electronically stored information responsive to a request has been lost or destroyed, describe the content of the document or information, the location of any copies of the document or information, the date the document or information was lost or destroyed, and the name of the person who ordered or authorized the destruction, and provide any documents and electronically stored information existing at the time of such loss or destruction setting forth or concerning any policy or procedure then in effect for destruction or retention of documents and electronically stored information.

7.     If, in answering any of the requests, any ambiguity in construing either the request or a definition or instruction relevant to the inquiry contained within the request is encountered, identify the matter deemed ambiguous and set forth the construction chosen or used in responding to the request.

8.     Each request is to be answered separately and as completely as possible.  Each paragraph and subparagraph hereof and the definitions herein are to be construed independently, and not by or with reference to any other paragraph or subparagraph or definition herein for purposes of limiting the scope of any particular request or the subject matter thereof.

11

9.     The fact that investigation is continuing or that discovery is not complete shall not be used as an excuse for failure to respond to each request based on the knowledge and information currently available.

10.     Where responsive documents or electronically stored information are partly or wholly in a language other than English, state whether any translation of the non-English language information exists and, if so, provide the non-English information and its English translation.

11.     Documents and electronically stored information from any single file should be produced in the same order as they were found in such file.

12.     Each request that seeks documents and electronically stored information concerning communications to, from, or within a business or a corporate entity, is hereby designated to demand, and should be construed to include, all communications by and between representatives, employees, agents, brokers, and servants of the business or corporate entity.

13.      These requests are deemed to be continuing in nature, and in the event that you become aware of or acquire possession, custody or control of additional responsive documents or electronically stored information, you are requested promptly to inform counsel for Plaintiffs and produce such additional information for inspection and copying.

14.     When any request calls for the production of any portion of any document, the entire document containing any such portion must be produced.

**Requests for Production of Documents and Electronically Stored Information**

The following Requests are identical to the Viacom Requests, except for request nos. 78 and 79, and except for the addition of request nos. 80 and 81.

1.      Documents and electronically stored information sufficient to describe in detail the design and operation of the entire YouTube website, including every feature thereof, whether or not the feature is used by or visible to users of the YouTube website.

2.      All versions of all code sufficient to recreate all features of the YouTube website, whether past, present, or contemplated.

3.      Each document and all electronically stored information concerning any process, procedure or technology applied to videos uploaded to the YouTube website before they are available for viewing by users, including the procedures, processes, and technology used to transcode videos and any use of Adobe Remixer.

4.      Each document and all electronically stored information concerning Defendants' review or monitoring of videos uploaded to the YouTube or Google Video websites, whether such review or monitoring is by human, electronic or any other means, and whether or not such review or monitoring has been implemented.  This request includes review or monitoring of videos for any purpose, including in connection with advertising or the use of Google AdWords or Google AdSense, and review for the purpose of identifying, restricting or disabling access to, or removing from the YouTube or Google Video websites any Inappropriate Content, including material identified by YouTube or Google Video users as inappropriate using the Flag as Inappropriate Feature, and including any review by employees or agents of Defendants colloquially referred to as the "porn patrol."  This request also includes review or monitoring of videos at any time, including (a) before or after videos are made available for viewing on the YouTube or Google Video websites; (b) before or after videos are indexed; (c) before or after videos are made available for viewing through the Browse Feature, Friends Feature, Share Feature, Streaming, or any other feature of YouTube or Google Video; (d) before or after videos

are streamed to third parties (such as Apple); (e) before or after videos are designated as Featured

Videos or Promoted Videos; and (f) before or after videos are included in the Partner Program.

This request further includes each document and all electronically stored information concerning

any operational or design feature, whether considered, adopted, or rejected, to review or monitor

content posted on the YouTube or Google Video websites for Inappropriate Content, and/or to

identify, restrict, or disable access to such content.

      5.      Each document and all electronically stored information concerning any internal

or third-party assessment, report, analysis or discussion of the costs, benefits, or feasibility of

conducting human, electronic, or automated review of videos either before or after they are made

available for viewing on the YouTube or Google Video websites.

      6.      Each document and all electronically stored information concerning Defendants'

policies, practices and processes for removing or making inaccessible, for any reason, videos

available on the YouTube and Google Video websites, including any technical steps taken by

Defendants to remove videos or to restrict or disable access to videos.

      7.      All videos that have been the subject of Takedown Requests, including (a) the

original file uploaded by the user, (b) the transcoded file, (c) all metadata, (d) username of

uploader; (e) video title; (f) video length; (g) time stamp the video was uploaded; (h) the URL

where the video is located; (i) all tags supplied by the user; (j) all tags supplied by YouTube or

Google; (k) embed code; (l) number of times the video has been embedded on third-party sites;

(m) all URLs to which the video has been embedded; (n) video ratings; (o) number of views and

the times of those views; (p) all comments; (q) number of times "favorited" by users; (r) whether

the video appeared as a Featured Video, "pick of the day," or was in any way referenced within

the links in YouTube's Browse Feature, including the "Top Favorites," "Most Linked," and

"Most Discussed" links, and if so when, for how long, and how it became a Featured Video, pick of the day, or in any way referenced within the links in YouTube's Browse Feature; (s) any flags as inappropriate, and if so, the responsive steps that were taken; (t) the number of page hits for each video and the times of those page hits; (u) all originating information (including the http referer) for each page hit; (v) the number of unique visitors for each video; (w) if embedded on third-party sites, the number and times of views, number and times of page hits, originating information (including the http referer) for each page hit, and number of unique visitors on each third-party site.

8.    All videos uploaded to the YouTube and Google Video websites and made available for viewing, whether or not subsequently removed, including (a) the original file uploaded by the user, (b) the transcoded file, (c) all metadata, (d) username of uploader; (e) video title; (f) video length; (g) time stamp the video was uploaded; (h) the URL where the video is located; (i) all tags supplied by the user; (j) all tags supplied by YouTube or Google; (k) embed code; (l) number of times the video has been embedded on third-party sites; (m) all URLs to which the video has been embedded; (n) video ratings; (o) number of views and the times of those views; (p) all comments; (q) number of times "favorited" by users; (r) whether the video appeared as a Featured Video, "pick of the day," or was in any way referenced within the links in YouTube's Browse Feature, including the "Top Favorites," "Most Linked," and "Most Discussed" links, and if so when, for how long, and how it became a Featured Video, pick of the day, or in any way referenced within the links in YouTube's Browse Feature; (s) any flags as inappropriate, and if so, the responsive steps that were taken; (t) the number of page hits for each video and the times of those page hits; (u) all originating information (including the http referer) for each page hit; (v) the number of unique visitors for each video; (w) if embedded on third-

party sites, the number and times of views, number and times of page hits, originating

information (including the http referer) for each page hit, and number of unique visitors on each

third-party site. Plaintiffs are willing to discuss narrowing this request to samples of uploaded

videos.

9.     In their entirety, all databases, repositories, or other enterprise data collected or

used by Defendants to collect, maintain, or otherwise store any of the following information

about videos that have been uploaded to the YouTube and Google Video websites: (a) username

of uploader; (b) video title; (c) video length; (d) time stamp the video was uploaded; (e) the URL

where the video is located; (f) all tags supplied by the user; (g) all tags supplied by YouTube or

Google; (h) embed code; (i) number of times the video has been embedded on third-party sites;

(j) all URLs to which the video has been embedded; (k) video ratings; (l) number of views and

the times of those views; (m) all comments; (n) number of times "favorited" by users; (o)

whether the video appeared as a Featured Video, "pick of the day," or was in any way referenced

within the links in YouTube's Browse Feature, including the "Top Favorites," "Most Linked,"

and "Most Discussed" links, and if so when, for how long, and how it became a Featured Video,

pick of the day, or in any way referenced within the links in YouTube's Browse Feature; (p) any

flags as inappropriate, and if so, the responsive steps that were taken; (q) the number of page hits

for each video and the times of those page hits; (r) all originating information (including the http

referer) for each page hit; (s) the number of unique visitors for each video; (t) if embedded on

third-party sites, the number and times of views, number and times of page hits, originating

information (including the http referer) for each page hit, and number of unique visitors on each

third-party site.

10.    Each other document and all other electronically stored information concerning the databases, repositories, or other enterprise data referenced in document request no. 9, including any documents summarizing, reporting, or analyzing any such data in whole or in part.

11.    Documents and electronically stored information sufficient to reflect, for each video uploaded to the YouTube and Google Video websites, (a) how many copies are made, stored and maintained, (b) by what means and in which formats, (c) the locations within the YouTube infrastructure where each such copy resides, (d) what each such copy is used for, including but not limited to use for the making of further copies, adaptations, distribution, display, transmission or performance, whether or not publicly accessible, and (e) the disposition and retention of each such copy once Defendants have knowledge or notice that it contains infringing or allegedly infringing material.

12.    Documents and electronically stored information sufficient to identify all of the types of information (personal, private, proprietary, or otherwise) that Defendants collect from users of the YouTube and Google Video websites.

13.    All web server log data for the YouTube and Google Video websites collected or maintained by Defendants, or reported by Defendants to any person or entity working on their behalf, including Google Analytics.

14.    Each document and all electronically stored information concerning the development, business strategy, monetization, technology, operation, functionality, and any proposed or executed modification concerning the following features or programs associated with YouTube:  (a) Audio Swap Program; (b) Browse Feature; (c) Director, Guru, Comedian and Musician Programs and/or Accounts; (d) Embedding Feature; (e) Featured Videos, or any other selection of video content; (f) Friends Feature; (g) Partner Program; (h) Promoted Videos; (i)

Share Feature; (j) Active Sharing Feature; (k) Streaming; (l) Video Awards Program; (m) Video Search Feature; and (n) Categories.

15.     Each document and all electronically stored information commenting on, analyzing, or discussing the features or programs listed in request no. 14, including any discussion of (a) Defendants' ability to ensure that the use of the features or programs complies with Defendants' Website Rules; (b) Defendants' ability to review, monitor, identify, remove, or disable access to Inappropriate Content, including infringing or potentially infringing content; (c) the effect of the features or programs on copyright owners' ability to identify and request removal of their copyrighted content, including any copyrighted works owned by Plaintiffs; and (d) Defendants' liability or potential liability for copyright infringement.

16.     Each document and all electronically stored information concerning the number of users and the number and identity of videos viewed using the Share, Active Sharing, Embedding or Streaming Features.

17.     Each document and all electronically stored information concerning the development, technology, operation, functionality, and any proposed or executed modification of Defendants' indexing of videos uploaded to the YouTube website.

18.     Each document and all electronically stored information concerning Defendants' policies, practices, processes and technology concerning the creation of thumbnails of videos hosted on the YouTube website, including thumbnails used in conjunction with YouTube's Video Search or Browse Functions, and thumbnails displayed on the YouTube homepage.

19.     Each document and all electronically stored information concerning any changes that have been made to the technology, operation, design or functionality of the YouTube website since the YouTube website was first launched, including any changes made to the

YouTube website since Google's acquisition of YouTube was first announced (for example, but without limiting the foregoing, YouTube's April 20, 2007 database architecture changes).

20.     Each document and all electronically stored information concerning any limitation Defendants have placed or have considered placing on the duration of videos that a user is permitted to upload to the YouTube and Google Video websites.

21.     Each document and all electronically stored information concerning communications relating to the display of information on the YouTube website that in any way identifies third-party sites linking to specific videos, including the decision to stop displaying such information on the YouTube website.

22.     Each document and all electronically stored information concerning the development, technology, and operations concerning any interaction between the search, advertising, toolbar, storage and other features and functionalities of YouTube and the search, advertising, toolbar, storage and other features and functionalities of Google, including the actual or future financial value or monetization of any such interaction.  This request includes the integration of YouTube search results into Google Universal Search or Google Video search results.   This request also includes any discussions, negotiations or agreements between Google and YouTube regarding the actual or potential interaction between the search and other features of the YouTube website and the search and other features of the Google Video website.

23.     Each document and all electronically stored information reflecting any differences in functionality between YouTube's Video Search Feature prior to YouTube's acquisition by Google and YouTube's current Video Search Feature or any planned Video Search Feature. This request includes the integration of YouTube search results into Google Universal Search or Google Video search results.

24.    Each document and all electronically stored information concerning the development, technology, operation, functionality, and any proposed or executed modification of the function(s) that enable users to provide a title, description, and tags for videos uploaded to the YouTube website.  This request includes any document commenting on, analyzing, discussing or otherwise referring to (a) any limitations Defendants place on the titles, descriptions or tags that may be used to refer to a video; (b) any electronic, human or other monitoring or review of titles, descriptions, or tags carried out by Defendants; (c) any modifications to titles, descriptions, or tags made by Defendants; (d) Defendants' enforcement of, or attempt to enforce, the Website Rules with respect to titles, descriptions, or tags; (e) Defendants' actual use of, or ability to use, titles, tags or descriptions to review, monitor, identify and remove Inappropriate Content, including infringing or potentially infringing content; (f) copyright owners' actual use of, or ability to use, titles, tags or descriptions to identify and request the takedown of their copyrighted content, including any copyrighted works owned by Plaintiffs; and (g) YouTube website users' use of misspelling, code-words, non-Latin alphabet characters or other manipulation of titles, descriptions and tags to refer to infringing or potentially infringing content, or other types of Inappropriate Content.

25.    Each document and all electronically stored information concerning the downloading or copying of videos from the YouTube and Google Video websites by users, and/or the distribution of software that enables such downloading or copying, and any measures taken by Defendants to prevent, hinder, or facilitate such downloading or copying, or the distribution of such software.

26.    Each document and all electronically stored information concerning any actual or proposed business models, business plans, strategic plans, budgets, or forecasts for YouTube or

Google Video, whether developed by Defendants or a third party, including any strategic options for YouTube or Google Video, including the sale of YouTube to Google or any other entity. This request is not limited by Instruction No. 1 and thus covers all responsive documents and electronically stored information whether created before, on, or after January 1, 2004.

27.     Each document and all electronically stored information concerning any actual or potential investment in, or financing provided to YouTube including (a) all communications with potential or actual investors in, or providers of financing to YouTube, including any representations made concerning YouTube's business model; (b) all documents prepared for or presented to actual or potential investors in, or providers of financing to YouTube, including any representations made concerning YouTube's business model; and (c) all documents received from actual or potential investors in, or providers of financing to YouTube; and (d) all documents analyzing or assessing investments in or the financing of YouTube, whether prepared by Defendants or a third party.

28.     Documents sufficient to identify all past or present shareholders or holders of a beneficial interest in YouTube.

29.     Each document and all electronically stored information concerning YouTube's or Google Video's past, present, or future, and actual or projected: (a) advertising and other revenues; (b) profits; (c) operational and other costs; (d) sources of funding; (e) market share, whether expressed as share of number of online videos, share of internet traffic, share of number of viewers or visitors, or any other measure of market share; (f) number of users or visitors; (g) number of daily page hits; (h) number of page views; (i) number of users; or (j) number of unique visitors.  This request is not limited by Instruction No. 1 and thus covers all responsive

documents and electronically stored information whether created before, on, or after January 1, 2004.

30.     Each document and all electronically stored information concerning the strategies, business plans, growth, market share, or financial results of any competitors of YouTube or Google Video, as well as any competitors' use of any copyright protection technologies or any competitors' actual or potential review, monitoring, identification of, or removal of infringing or potentially infringing content, or any other Inappropriate Content.

31.     Each document and all electronically stored information concerning any communications, negotiations or discussions between Defendants and Plaintiffs, or between Defendants any other entity, relating to potential licenses or other agreements for Defendants to display, perform or otherwise use Plaintiffs' or any other entity's copyrighted content on the YouTube or Google Video websites.  This request includes any offer by Defendants, as part of the negotiations, to employ audio fingerprinting, video fingerprinting, filtering, hashing, or any other copyright protection technology, or to remove or disable access to infringing or potentially infringing copies of Plaintiffs' or any entity's copyrighted works from the YouTube or Google Video websites.  This request includes negotiations between Defendants and the following entities: Apple, Inc., the BBC, CBS, Inc., Digital Music Group, Inc., EMI Music, Federation Francaise de Tennis (the French tennis federation), the Football Association Premiere League, Hearst-Argyle Television, Ligue de Football Professionel (the French soccer league), Major League Soccer, the National Basketball League, the National Hockey League, NBC, Sony BMG Music Entertainment, the Sundance Channel, Universal Music Group, VH1, and Warner Music Group.

32.     Each document and all electronically stored information concerning any revenues, profits, or other financial benefit earned, or cost incurred, by Defendants in connection with any licensing or other agreement that authorizes Defendants to display, perform or otherwise use an entity's copyrighted content on the YouTube or Google Video websites.

33.     For any entity that eventually entered into a license or other agreement with Defendants to copy, publicly perform, display or otherwise exploit its content, including all entities referenced in request no. 31, documents sufficient to identify the number of videos that were uploaded to the YouTube or Google Video websites that contained content owned or claimed by such entity, as well as the number and times of views of those videos, both prior to after such entity entered into the license or other agreement with Defendants, including authorized and unauthorized content.

34.     Each document and all electronically stored information concerning any actual or potential revenue-sharing between YouTube and its users, including the Partner Program.

35.     Each document and all electronically stored information concerning Google's acquisition of YouTube, including any reports, analyses or assessments carried out by Google, YouTube, investment banks, or any other person, and including any communications between or among Google, YouTube and any investor in YouTube or Google (*e.g.*, Sequoia Capital, Artis Capital Management Inc., TriplePoint Capital LLC). .

36.     Each document and all electronically stored information concerning Google's acquisition of YouTube that refers to actual or proposed indemnification or an actual or proposed litigation reserve in relation to copyright infringement lawsuits that might be brought against Defendants in relation to the YouTube website.

37.     Each document and all electronically stored information concerning any person or entity that considered acquiring or merging with YouTube, including persons or entities that entered into negotiations with YouTube regarding a potential acquisition of or merger with YouTube.

38.     Each document and all electronically stored information concerning any other UGC Company that Google has considered acquiring or merging with, including UGC Companies that entered into negotiations with Google regarding a potential acquisition by or merger with Google.

39.     Each document and all electronically stored information concerning Google's plans and strategies for making UGC or other video content available for viewing online, including any efforts Google has taken or considered taking in order to make UGC or other video content available for viewing online.

40.     Each document and all electronically stored information concerning the types of advertising that Defendants' have offered or have considered offering in connection with the YouTube or Google Video website, including CPC advertising, CPM advertising, advertising targeted to particular video clips, and any other type of advertising, and including where and when each type of advertising is displayed and any actual or potential revenue or other financial benefit associated with each type of advertising.  This request shall include banner or other advertising appearing on any page throughout the YouTube website.  This request is not limited by Instruction No. 1 and thus covers all responsive documents and electronically stored information whether created before, on, or after January 1, 2004.

41.     Each document and all electronically stored information concerning plans, discussions, strategies or proposals to implement advertising of any kind or any other form of

revenue generation concerning the YouTube or Google Video websites, regardless of whether

the advertising or other form of revenue generation has been adopted or used on the YouTube or

Google Video websites.  This request is not limited by Instruction No. 1 and thus covers all

responsive documents and electronically stored information whether created before, on, or after

January 1, 2004.

      42.    Each document and all electronically stored information concerning

communications with advertising companies that provide or have considered providing

advertising services to YouTube or Google Video, including 24/7 Real Media, Inc., Adbrite, Inc.,

DoubleClick, Fastclick, Inc., Google, Inc., and Tribal Fusion, or communications with actual or

potential advertisers on the YouTube or Google Video websites.  This request includes any

communications regarding the presence of Inappropriate Content, including infringing or

potentially infringing content, on the YouTube or Google Video websites.

      43.    Each document and all electronically stored information concerning Defendants'

advertising policies, procedures, or practices, including any such policies, procedures or

practices concerning the human or electronic review or monitoring of advertisements.

      44.    Each document and all electronically stored information concerning any

advertising or promotional opportunity offered to third parties in relation to the YouTube

website, whether or not the advertising or promotional opportunity was accepted, including

corporate sponsorships offered to Cingular Wireless or any other entity, and any type of co-

branding.

      45.    Each document and all electronically stored information concerning the actual or

potential use of Google AdSense or Google AdWords in connection with the YouTube website,

including any revenues, profits or financial benefit earned, or financial expenditure made, by

Defendants or any third party as a result of the use of Google Adsense or Google AdWords in connection with the YouTube website.

46.    Each document and all electronically stored information concerning any reports or analyses of advertising or marketing activities concerning the YouTube or Google Video websites, including the effectiveness of such advertising or marketing activities.

47.    Each document and all electronically stored information concerning Google's acquisition of DoubleClick.

48.    Each document and all electronically stored information concerning viral or stealth marketing by any entity on the YouTube website.

49.    Each document and all electronically stored information concerning the actual or potential presence of Inappropriate Content, including infringing or potentially infringing content, on the YouTube or Google Video websites, including any financial or other benefit (*e.g.*, any increase in revenue, number of users, or traffic) Defendants derive or could derive from the actual or potential presence of such content.  This request includes documents and electronically stored information concerning the actual or potential presence of content that may qualify as fair use under the intellectual property laws of the United States and any discussions or communications by or among Defendants and any third parties.  This request is not limited by Instruction No. 1 and thus covers all responsive documents and electronically stored information whether created before, on, or after January 1, 2004.

50.    Each document and all electronically stored information concerning "red flags" indicating copyright infringement, or Defendants' interpretation of facts or circumstances from which infringing activity is apparent, on the YouTube, Google Video, or any other website.

51.    Each document and all electronically stored information concerning any actions taken by Defendants' employees or agents to upload videos to YouTube.  This request does not include the uploading of videos by YouTube users who are not employees or agents of Defendants.

52.    Each document and all electronically stored information concerning the actual or potential presence of Inappropriate Content, including infringing or potentially infringing content, on any website other than the YouTube or Google Video websites, including any efforts to review, monitor, reduce or limit the presence of such content.

53.    Each document and all electronically stored information concerning the applicability of the DMCA to Defendants' websites, Plaintiffs' websites, or any third party website.

54.    Each document and all electronically stored information concerning any actions that Defendants have taken or have contemplated taking to identify, remove, disable access to, or prevent the upload of Inappropriate Content.

55.    Each document and all electronically stored information concerning the Website Rules, including any actions taken by Defendants to identify violations of, or to enforce, their Website Rules.  This request includes any internal communications and communications with users or other third parties regarding Defendants' Website Rules.

56.    Each document and all electronically stored information concerning any training of Defendants' employees or agents in relation to the YouTube or Google Video websites.  This request includes all materials used in or prepared for such training, including manuals, presentations and instructional videos.

57.    Each document and all electronically stored information concerning Defendants'
actual or contemplated efforts to ensure that YouTube and Google Video comply with the
"repeat infringer" provision of the DMCA (17 U.S.C. § 512(i)(1)(A)), including (a) any policies,
customs, practices, procedures, instructions, or rules concerning "repeat infringers," (b) any
efforts Defendants have made or considered making to communicate their policies regarding
"repeat infringers" to their users; and (c) any efforts Defendants have made or considered
making to enforce those policies, including by terminating repeat infringers.  This request is not
limited by Instruction No. 1 and thus covers all responsive documents and electronically stored
information whether created before, on, or after January 1, 2004.

58.    Each document and all electronically stored information that identifies the
usernames,  names, contact information, and date of account termination for all YouTube and
Google Video website users whose user accounts have been terminated pursuant to Defendants'
repeat infringer policies.

59.    Each document and all electronically stored information concerning all Takedown
Requests, all complaints regarding the presence of infringing or potentially infringing content on
the YouTube or Google Video websites, and all complaints regarding any action taken by
Defendants in response to Takedown Requests, including all internal communications and
communications with users or third parties.

60.    Each document and all electronically stored information concerning Defendants'
policies, practices, procedures, and processes concerning Takedown Requests, including the
policies, practices, procedures and processes (a) for determining when a Takedown Request
"substantially complies" with the requirements of 17 U.S.C. § 512(c)(3)(A), (b) for removing or
disabling access to videos that have been the subject of a Takedown Request or have otherwise

28

been identified as infringing or potentially infringing; and (c) for implementing or responding to Takedown Requests containing representative lists of infringing or potentially infringing content.

61.    Each document and all electronically stored information concerning the upload or attempted upload to the YouTube or Google Video websites of videos that are identical or similar to videos that have been the subject of a Takedown Request, including any action taken by Defendants to identify, remove, disable access to, or prevent the upload of such videos.

62.    Each document and all electronically stored information concerning any actions Defendants have taken, have considered taking, or plan to take in order to identify and remove or otherwise disable access to Plaintiffs' copyrighted content on the YouTube or Google Video website.

63.    All documents concerning the extent to which Defendants have changed any policies, procedures or processes concerning the availability of infringing content on the YouTube or Google Video websites, or deployed any additional resources to prevent or mitigate infringement on the YouTube or Google Video websites, since the filing of any action against Defendants for copyright infringement, including but not limited to this action, the Tur Action, and the Football Association Premiere League Action, as well as the effectiveness of those efforts and all internal and external communications relating thereto.

64.    Each document and all electronically stored information concerning any existing or proposed copyright protection technology or mechanism, including human, electronic, or automated review, watermarking, audio fingerprinting, video fingerprinting, filtering, and hashing.  This request includes all internal communications and communications with third parties (*e.g.*, Audible Magic and Fortium) regarding copyright protection technologies and mechanisms.  This request is not limited by Instruction No. 1 and thus covers all responsive

documents and electronically stored information whether created before, on, or after January 1, 2004.

65.    Each document and all electronically stored information concerning the effectiveness of any existing or proposed copyright protection technology or mechanism, including human, electronic, or automated review, watermarking, audio fingerprinting, video fingerprinting, filtering and hashing.

66.    Each document and all electronically stored information concerning the Content Verification Program, Copyright Verification Tool, and Claim Your Content Program, including (a) the development, technology, operation, functionality, and any proposed or executed modification of the Content Verification Program, Copyright Verification Tool, or Claim Your Content Program; (b) any agreements with participants or third parties in connection with the Content Verification Program, Copyright Verification Tool, or Claim Your Content Program; (c) any training or explanatory materials concerning the Content Verification Program, Copyright Verification Tool, or Claim Your Content Program; and (d) any discussions, reports, or assessments of any effect the Content Verification Program, Content Verification Tool, or Claim Your Content Program might have on the presence of infringing or potentially infringing material on the YouTube website, or on Defendants' potential liability for copyright infringement.

67.    Each document and all electronically stored information concerning any tests of the Content Verification Program, Content Verification Tool, or Claim Your Content Program, including tests carried out in cooperation with Time Warner Inc., Walt Disney Co., and Plaintiffs.  This request includes all test protocols, all test results, and all internal communications and communications with test participants and third parties regarding the tests.

68.     Each document and all electronically stored information concerning any communications between Defendants and insurance companies regarding liability coverage for copyright infringement.

69.     Each document and all electronically stored information concerning any statement to the public or press by Defendants relating in any way to YouTube, Google Video, copyright protection or the DMCA, including (a) Google's negotiations with YouTube and its ultimate acquisition of YouTube; (b) the presence of Inappropriate Content on the YouTube or Google Video websites; (c) copyright protection technologies or mechanisms, including audio fingerprinting, video fingerprinting, filtering and hashing; (d) the Content Verification Program or Copyright Verification Tool; (e) the Claim Your Content Program; (f) the Audio Swap Feature; (g) the Browse Feature; (h) the Director Program and Director Accounts; (i) the Embedding Feature; (j) the Featured Videos Program; (k) the Friends Feature; (l) the Partner Program; (m) the Share Feature; (n) the ActiveShare Feature; (o) Streaming; (p) the Video Awards Program; (q) the Video Search Feature; and (r) Categories.

70.     Each document and all electronically stored information concerning any lobbying by Defendants concerning YouTube, Google Video, or the DMCA.

71.     Each document and all electronically stored information concerning any blog posting by Defendants, including any drafts thereof, relating in any way to the allegations in the Complaint or to Defendants' Answer.  This request includes the YouTube Blog and the Official Google Blog.

72.     Documents sufficient to show Defendants' corporate structure (including relationships among and ownership of all subsidiaries of Defendants).

73.    Documents sufficient to show the employees and reporting relationships in each department in YouTube, Google Video, and any department of Google that has any involvement in, oversight of, or management responsibility for any aspect of YouTube or Google Video.

74.    All communications with any person that is or was involved in a lawsuit against Plaintiffs (including MOVEON.ORG) concerning that person's lawsuit or Plaintiffs.

75.    All communications between Plaintiffs and Defendants.

76.    Each document and all electronically stored information concerning Plaintiffs.

77.    All communications with third parties concerning Plaintiffs, this lawsuit, copyright protection, or the DMCA.

78.    Each document and all electronically stored information that Defendants intend to rely on in this case.

79.    Each document and all electronically stored information concerning any defenses that Defendants intend to assert in this action.

80.    To the extent not included in any other request, each document and all electronically stored information concerning any actual or contemplated decision by Defendants to make videos on the YouTube website available to be viewed on mobile phones, including the Apple iPhone, and including: (1) all agreements or draft agreements relating to such a decision or decisions; (2) the steps being taken or precautions imposed to prevent copyright infringement on mobile phones, including the Apple iPhone, if any; (3) at whose behest these steps or precautions are or were being taken, (4) any representations made by Defendants regarding the availability and effectiveness of filtering or fingerprinting technology on mobile phones, including the Apple iPhone; and (5) any communications by and among Defendants and any third parties concerning the foregoing.

81.    Each document and all electronically stored information concerning any actual or contemplated decision to launch the YouTube website in countries other than the U.S., including Brazil, France, Ireland, Italy, Japan, Netherlands, Poland, Spain, the UK, and South Korea, and including: (1) any discussions, assessments or analyses concerning the launch of the YouTube website in countries other than the U.S. only after obtaining licenses or implementing filtering technologies to screen out potentially infringing content; (2) all agreements or draft agreements related to the launch of the YouTube Website in countries other than the U.S.; (3) the steps taken or precautions imposed to prevent copyright infringement on the YouTube website in countries other than the U.S.; (4) at whose behest these steps or precautions are or were being taken; (5) any representations made by Defendants regarding the availability and effectiveness of filtering or fingerprinting technology for the YouTube website in countries other than the U.S; and (6) documents sufficient to reflect any differences in the design, operation, or technology between or among the U.S. version of the YouTube website and any versions in countries other than the U.S.

Dated: July 2, 2007
New York, New York

Louis M. Solomon
William M. Hart
Noah S. Gitterman
Dolores F. DiBella
PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036-8299
Phone:  212-969-3000

-and-

Max W. Berger
John P. Coffey
John C. Browne
Eric T. Kanefsky

33

BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP
1285 Avenue of the Americas
New York, NY 10019
Phone: 212-554-1400
*Attorneys for Lead Plaintiffs Premier*
*League and Bourne and the Prospective*
*Class*

TO:

David H. Kramer
Bart E. Volkmer
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA 94304
Telephone (650) 493 9300
Facsimile (650) 493-6811

Tonia Maria Ouellette Klausner
WILSON SONSINI GOODRICH & ROSATI
12 East 49th Street
30th Flr.
New York, NY 10017
Telephone (212) 999-5858
Facsimile (212) 999-5899

Mark S. Ouweleen
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
Courthouse Place
54 W. Hubbard St.
Suite 300
Chicago, IL 60610
Telephone (312) 494-4465
Facsimile (312) 494-4440

*Attorneys for Defendants*

EXHIBIT C

87fQfooC.txt

87fQfooC

| | |
|---|---|
| 1 | UNITED STATES DISTRICT COURT |
| | SOUTHERN DISTRICT OF NEW YORK |
| 2 | ------------------------------x |
| 3 | THE FOOTBALL ASSOCIATION |
| | PREMIER LEAGUE, BOURNE CO, |
| 4 | (together with its affiliate |
| | MURBO MUSIC PUBLISHING, INC., |
| 5 | CHERRY LANE MUSIC PUBLISHING |
| | CO., INC., CAL IV |
| 6 | ENTERTAINMENT, LLC, ROBERT TUR |
| | d/b/a LOS ANGELES NEWS |
| 7 | SERVICE, NATIONAL MUSIC |
| | PUBLISHERS ASSOCIATION, THE |
| 8 | RODGERS & HAMMERSTEIN |
| | ORGANIZATION, STAGE THREE |
| 9 | MUSIC (US), INC., EDWARD B. |
| | MARKS MUSIC COMPANY, FREDDY |
| 10 | BEINSTOCK MUSIC COMPANY d/b/a |
| | BIENSTOCK PUBLISHING COMPANY, |
| 11 | ALLEY MUSIC CORPORATION, X-RAY |
| | DOG MUSIC, INC., FEDERATION |
| 12 | FRANCAISE DE TENNIS, THE |
| | SCOTTISH PREMIER LEAGUE |
| 13 | LIMITED, THE MUSIC FORCE MEDIA |
| | GROUP, LLC, THE MUSIC FORCE, |
| 14 | LLC, and SINDROME RECORDS, |
| | LTD., on behalf of themselves |
| 15 | and all others similarly |
| | situated, |
| 16 |                    Plaintiffs, |
| 17 |           v.                    07 CV 3582 (LLS) |
| 18 | YOUTUBE, INC., YOUTUBE, LLC |
| | and GOOGLE, INC., |
| 19 |                    Defendants. |
| 20 | ------------------------------x |
| | New York, N.Y. |
| 21 | |
| | July 15, 2008 |
| 22 | 3:10 p.m. |
| | Before: |
| 23 | |
| 24 |              HON. LOUIS L. STANTON, |
| 25 |                         District Judge |

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

♀

87fQfooC

87fQfooC.txt

25    and, that is, it's for purposes of this litigation, especially

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

25

87fQfooC

1    in a case where we give them notice in advance, I think we

2    ought to be found to have complied with the order or, at a

3    minimum, find some way to allow us to file our motion in the

4    Ninth Circuit.  Thank you, Judge.

5        THE COURT:  Thank you, counsel.  I am prepared to rule

6    on these matters, and it seems to me that the ruling should

7    start where the arguments close, which is with the last

8    sentence of paragraph 14 of the protective order.  "In

9    particular, neither confidential nor highly confidential, nor

10   any copies and/or extracts thereof nor anything derived

11   therefrom shall be disclosed in any way to any person,

12   attorney, government agency, or expert, for use in any other

13   litigation or contemplated litigation or for any other purpose

14   extraneous to this litigation."

15       Now, that hints at the central underlying question on

16   this application, which is whether the Tur case in the Ninth

17   Circuit is effectively this case, so that disclosure to

18   Mr. Pizzulli for him to use in the Ninth Circuit was

19   permissible under paragraph 2a of the protective order, which

20   permits disclosure to "outside counsel retained by a party for

21   representation in this case."  And then the language goes on.

22       Now, the parties and the claims in the Tur case

23   include -- I'm sorry, in this case include the parties and the

24   claims in the Tur case, but the two cases are separate.  They

25   were separately commenced in separate jurisdictions.  The Tur

87fQfooC.txt
(212) 805-0300

26

87fQfooC

1   case was discontinued for the purpose of gaining efficiency of
2   combining the litigation of its claims here.  There is a
3   proceeding in the Ninth Circuit in the Tur case which is not a
4   proceeding in this case, and, of course, a judgment rendered in
5   the appeal of the Tur case may have res judicata or estoppel
6   effect here in this case, but that is true of judgments
7   rendered in other courts in separate cases all the time.

8           This case is meticulously defined in paragraph 14 of
9   the protective order, and it does not include the Tur action in
10  the Ninth Circuit.  So, Mr. Pizzulli's retainer in the Tur
11  action is not of itself a retainer in this action, nor does
12  anything of record in this action indicate that he has been
13  retained or could be retained in this action.  Neither his name
14  nor his firm appear as signatories to the protective order.  In
15  that order, Tur is represented by Proskauer Rose and Bernstein
16  Litowitz.  Mr. Pizzulli has not filed a notice of appearance
17  nor sought to appear pro hac vice in this action.

18          From a check of the records this morning, he does not
19  appear to be a member of either the New York State bar or the
20  bar of this court.  Under the circumstances, Mr. Solomon's
21  statement in his July 15 letter to this Court that I quote
22  "Francis Pizzulli is acting as co-counsel for Tur in this
23  action" and "has been expressly retained for this action" seems
24  to be too cavalier a view of the words in paragraph 2a
25  "retained for representation in this case."

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

27

87fQfooC

Page 24

87fQfooC.txt

1         The better view is that expressed in Mr. Schapiro's
2    July 14 letter to the Court where he says at page 2: "The
3    protective order is clear about the set of attorneys entitled
4    to receive material designated as confidential.  Outside
5    counsel retained by a party for representation in this case"
6    quoting the protective order.

7         Mr. Pizzulli represents Mr. Tur in the Ninth Circuit,
8    but he is not counsel in the cases pending before this Court.
9    He is, therefore, not covered by the protective order.  Then he
10   starts another paragraph.  "Class plaintiffs suggested in
11   communications over the weekend that Mr. Pizzulli should be
12   considered counsel in this case because, according to class
13   counsel, Mr. Pizzulli is advising Mr. Tur about this case.
14   That reading of the protective order is unsustainable.  It
15   would allow the several firms of record in this case to share
16   information with any non-record counsel they want on the theory
17   that those lawyers' views might be helpful.  The parties' most
18   sensitive information could be circulating at dozens of firms.
19   Some of those firms, like Mr. Pizzulli's, might have other
20   active cases against one or more parties in this litigation."
21   I think that expresses the better view of this situation.

22        Now, Mr. Schapiro goes further and concludes that:
23   "The disclosure of the documents to Mr. Pizzulli is a breach of
24   the protective order, plain and simple."

25        I do not think that the question is plain or simple,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

28

87fQfooC

1    but I agree it was a breach of the protective order.  It
2    follows that Mr. Solomon's view expressed in his July 14 letter

Page 25

87fQfooC.txt

3      to the Court that the protective order allows the appeal in the

4      Ninth Circuit to be treated as part of this case is also wrong.

5      Thus, filing the documents in the Court of Appeals for the

6      Ninth Circuit was in breach of the protective order.  The fact

7      that plaintiffs disclosed their proposed finding in advance

8      showing the documents intended to be used and received no

9      objection on grounds of confidentiality, until much later in

10     the story, weighs heavily in the plaintiff's favor.  It would

11     be a complete answer if they had made clear that the documents

12     had been designated as confidential under the protective order

13     and asked for and sent under that order.

14             I do not have nor seek the power to tell the Court of

15     Appeals for the Ninth Circuit what materials they may admit to

16     be filed in the matters before them, and I am reluctant to tell

17     the parties to that appeal how to conduct it in that court.

18             I do authorize and direct counsel in this case to

19     inform the Court of Appeals for the Ninth Circuit that I have

20     ruled that disclosure of the documents to Mr. Pizzulli and

21     filed them with the Court of Appeals for the Ninth Circuit were

22     both in breach of the protective order.

23             I think that disposes of that part of the application.

24             I'm prepared to hear the parties and rule on the

25     question of de-designation of the documents if you want to

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

29

87fQfooC

1      proceed with that.  Otherwise, I'll await the completion of

2      whatever other proceedings there are in that respect to going

3      forward under the protective order.

4             MR. SCHAPIRO:  Just to clarify, your Honor, before we

5      get --

Page 26

EXHIBIT D

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

---

# FORM 10-Q

---

**(Mark One)**

☒ **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the quarterly period ended September 30, 2006

OR

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the transition period from _____ to _____

Commission file number: 000-50726

---

# Google Inc.
### (Exact name of registrant as specified in its charter)

---

**Delaware**                                          **77-0493581**
(State or other jurisdiction of                        (I.R.S. Employer
incorporation or organization)                         Identification Number)

**1600 Amphitheatre Parkway**
**Mountain View, CA 94043**
(Address of principal executive offices)
(Zip Code)

**(650) 253-4000**
(Registrant's telephone number, including area code)

---

Indicate by check mark whether the registrant: (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   Yes ☒   No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of "accelerated filer and large accelerated filer" in Rule 12b-2 of the Exchange Act. (Check one):

Large accelerated filer ☒   Accelerated filer ☐   Non-accelerated filer ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).   Yes ☐   No ☒

At October 31, 2006, the number of shares outstanding of Google's Class A common stock was 223,387,165 shares and the number of shares outstanding of Google's Class B common stock was 82,769,908 shares.

1

**GOOGLE INC.**

**NOTES TO CONDENSED CONSOLIDATED FINANCIAL STATEMENTS—(Continued)**
**(Unaudited)**

Revenues by geography are based on the billing addresses of the advertisers. No single foreign country, other than the United Kingdom, accounted for more than ten percent of total revenues in the three and nine months ended September 30, 2005 or 2006. The following table sets forth revenues and long-lived assets by geographic area (in thousands):

| | Three Months Ended September 30, | | Nine Months Ended September 30, | |
| --- | --- | --- | --- | --- |
| | 2005 | 2006 | 2005 | 2006 |
| | | (unaudited) | | |
| Revenues: | | | | |
| United States | $ 957,086 | $ 1,506,805 | $ 2,572,156 | $ 4,245,352 |
| United Kingdom | 233,207 | 422,494 | 618,586 | 1,135,314 |
| Rest of the world | 388,163 | 760,374 | 1,028,726 | 2,018,753 |
| Total revenues | $ 1,578,456 | $ 2,689,673 | $ 4,219,468 | $ 7,399,419 |

| | As of December 31, 2005 | As of September 30, 2006 |
| --- | --- | --- |
| | | (unaudited) |
| Long-lived assets: | | |
| United States | $ 1,080,236 | $ 3,480,374 |
| International | 190,506 | 354,615 |
| Total long-lived assets | $ 1,270,742 | $ 3,834,989 |

**Note 11. Subsequent Event**

We entered into an Agreement and Plan of Merger with YouTube, Inc. (YouTube) in October 2006 which we amended in November 2006. Under the terms of this agreement, as amended, we will acquire all of the outstanding equity interests of YouTube, a privately held company, for aggregate consideration of $1.65 billion. The consideration will be payable in shares of our common stock, which will be reduced to the extent we lend certain amounts of cash to YouTube prior to the closing of the acquisition. The number of shares of common stock to be issued will be based on the thirty day average closing price ending two trading days prior to the completion of the merger. We expect the transaction to close in the fourth quarter of 2006.

Michael Moritz, a member of our board of directors, is a general partner of Sequoia Capital, whose affiliates are stockholders of YouTube. Mr. Moritz recused himself from board decisions regarding this planned acquisition.

EXHIBIT E

JENNER&BLOCK

January 2, 2008

Jenner & Block LLP          Chicago
601 Thirteenth Street, NW    Dallas
Suite 1200 South             New York
Washington, DC 20005         Washington, DC
Tel 202-639-6000
www.jenner.com

*VIA E-MAIL*

Michael H. Rubin, Esq.
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA  94304

Scott B. Wilkens
Tel  202 639-6072
Fax  202 661-4832
swilkens@jenner.com

Re:    *Viacom International Inc., et al. v. YouTube, Inc. et al., 07 Civ. 02103*
       *The Football Association Premier League, et al. v. YouTube, Inc., et al., 07 Civ. 03582*

Dear Michael:

   I write to follow up on my December 18, 2007 letter on behalf of the Viacom and Class Plaintiffs proposing certain amendments to, and seeking agreement on, several document requests served on Sequoia Capital, Artis Capital Management and TriplePoint Capital LLC. We have not yet received a response to that letter and would like to schedule a follow up meet and confer this week.  Please advise as to your availability.

   In addition, I write to ask when Sequoia Capital and Artis Capital Management will produce documents in response to the subpoenas, which were served over three months ago.  As you know, we raised this issue during our December 7, 2007 meet and confer, at which time you were not willing to provide an estimated production date.  Please let us know when we can expect to receive documents from Sequoia Capital and Artis Capital Management.

Very truly yours,

Scott B. Wilkens

cc:    Caroline E. Wilson
       Noah Siskind Gitterman
       Travis P. Brennan
       Daniel B. Tehrani