DAVID H. KRAMER, State Bar No. 168452, dkramer@wsgr.com
MICHAEL H. RUBIN, State Bar No. 214636, mrubin@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:   (650) 565-5100

*Attorneys for Non-Party Respondents*
*Artis Capital Management, L.P., Sequoia*
*Capital Operations LLC and*
*TriplePoint Capital LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| VIACOM INTERNATIONAL INC., ET AL.<br><br>        Plaintiffs,<br><br>    v.<br><br>YOUTUBE, INC., ET AL.<br><br>        Defendants. | CASE NO.:  3:08-MC-80129-SI<br><br>[Case No. 07-cv-02103 (LLS) in the U.S. D.C., S.D.N.Y]<br><br>**DECLARATION OF KEVIN W. THORNE IN SUPPORT OF RESPONDENTS' OPPOSITION TO PLAINTIFFS' JOINT MOTION TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO SUBPOENAS TO ARTIS CAPITAL MANAGEMENT L.P., SEQUOIA CAPITAL OPERATIONS LLC, AND TRIPLEPOINT CAPITAL LLC** |
| THE FOOTBALL ASSOCIATION PREMIER LEAGUE LIMITED, ET AL.<br><br>        Plaintiffs,<br><br>    v.<br><br>YOUTUBE, INC., ET AL.<br><br>        Defendants. | [Case No. 07-cv-03532 (LLS) in the U.S. D.C., S.D.N.Y]<br><br>Date:         August 15, 2008<br>Time:         9:00 a.m.<br>Courtroom:  10<br>Judge:        Honorable Susan Illston |

I, Kevin W. Thorne, hereby declare that:

1. I am the Senior Vice President of Compliance & Legal Administration for non-party TriplePoint Capital LLC ("TriplePoint"). I submit this declaration in support of

THORNE DECLARATION ISO OPPOSITION TO
MOTION TO COMPEL
CASE NO. 08-MC-80129 (SI)

Respondents' Opposition to Plaintiffs' Joint Motion to Compel Production of Documents Pursuant to Subpoenas to Artis Capital Management L.P., Sequoia Capital Operations LLC, and TriplePoint Capital LLC. I have personal knowledge about the facts described below and if called upon to testify, could competently testify to them.

2. TriplePoint is a debt and equipment financier that has provided financing to hundreds of startups.

3. TriplePoint first considered providing equipment financing to YouTube in approximately January 2006. TriplePoint had no involvement with the company prior to that date.

4. On April 5, 2006, TriplePoint and YouTube entered into a standard equipment Loan and Security agreement, which allowed YouTube to purchase third party, off-the-shelf equipment, including computer servers. Under the terms of that agreement, YouTube made all decisions with regard to how to spend the funds, purchasing equipment that met the definition of equipment under the Loan and Security Agreement. For that portion of the transaction that was a loan, TriplePoint took a security interest in the equipment that YouTube purchased.

5. Also on April 5, 2006, TriplePoint and YouTube entered into a Plain English Warrant Agreement, which entitled TriplePoint to purchase a certain number of shares of YouTube at TriplePoint's option.

6. On August 24, 2006, TriplePoint and YouTube entered into a Master Lease Agreement, pursuant to which TriplePoint will retain ownership of the equipment used by YouTube until, upon termination of the lease, YouTube purchases, returns or re-leases the equipment. In connection with this lease agreement, TriplePoint and YouTube entered into another Warrant Agreement, which also granted TriplePoint the right to purchase certain shares of YouTube stock at TriplePoint's option.

7. TriplePoint exercised no control over, and did not participate in, the business strategies or decisions of YouTube.

8. The loan, lease, and warrant agreements with YouTube included a term requiring YouTube to inform TriplePoint of any proposed merger or sale or conveyance of all of

YouTube's assets at least twenty days prior to the closing date. On or around October 20, 2006, TriplePoint was informed of the pending merger between YouTube and Google.

9. After performing an internal evaluation of the shareholder obligations included in the merger agreement, on or around November 10, 2006, TriplePoint exercised its rights under the Warrant Agreements discussed above, by purchasing shares of YouTube Series B Preferred stock.

10. Additionally, on November 10, 2006, TriplePoint entered into an Assumption Agreement with Google, whereby the entity surviving the merger assumed YouTube's outstanding lease and loan, with Google guaranteeing the assumption.

11. Once the merger between Google and YouTube was completed on November 13, 2006, TriplePoint's shares of YouTube stock converted to shares of Google common stock.

12. Other than assessing what its own obligations would be under the merger agreement prior to exercising the warrants, TriplePoint had no other involvement in Google's acquisition of YouTube. TriplePoint did not conduct due diligence regarding or perform an independent analysis of the merger agreement. Moreover, TriplePoint performed no analysis of any potential liability for copyright infringement for YouTube or Google.

13. On September 28, 2007, TriplePoint was served with two identical non-party subpoenas in connection with two cases filed by Viacom International, Inc. et al. and The Football Association Premier League et al. against YouTube pending in the United States District Court for the Southern District of New York ("Subpoenas").

14. TriplePoint agreed to – and did – produce documents related to its own loan and lease to YouTube pursuant to the Subpoena.

15. TriplePoint expended considerable resources in responding to Plaintiffs' Subpoenas. Personally, I spent at least 40 hours searching for and collecting responsive documents, during which time I was diverted from performing my duties as Senior Vice President, Compliance & Legal Administration for the company.

16. Specifically, I conducted a two-step process in searching for, collecting and reviewing documents responsive to Viacom's Subpoena. *First*, I searched the relevant physical

1  files from the four employees directly involved in negotiating the loan and lease agreements with
2  YouTube.

3       17.    *Second*, I performed a search of the digital repositories likely to contain relevant
4  information. With respect to email in particular, because TriplePoint does not have the technical
5  ability to perform a centralized search of employee email, I had to separately search the
6  computers of the four employees involved in the negotiating the loan and lease agreements.

7       18.    If TriplePoint were obligated to further respond to the Subpoenas, I would have to
8  again devote considerable time searching for, collecting, and reviewing documents. As it was
9  the first time, this would be disruptive to my other responsibilities with the company.

10      19.    TriplePoint, along with all of its potential documents and witnesses, are located in
11 California.

13 I declare under penalty of perjury under the laws of the United States that the foregoing is
14 true and correct.

15 Executed on July 18, 2008, at Menlo Park, California.

16 _____
   Kevin W. Thorne

THORNE DECLARATION ISO OPPOSITION TO     -4-
MOTION TO COMPEL
CASE NO. 08-MC-80129 (SI)