1  DAVID H. KRAMER, State Bar No. 168452, *dkramer@wsgr.com*
   MICHAEL H. RUBIN, State Bar No. 214636, *mrubin@wsgr.com*
2  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
3  650 Page Mill Road
   Palo Alto, CA 94304-1050
4  Telephone: (650) 493-9300
   Facsimile: (650) 565-5100
5
   *Attorneys for Non-Party Respondents*
6  *Artis Capital Management, L.P., Sequoia*
   *Capital Operations LLC and*
7  *TriplePoint Capital LLC*

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                       SAN FRANCISCO DIVISION

11

12 VIACOM INTERNATIONAL INC., ET AL.  ) CASE NO.: 3:08-MC-80129-SI
                                      )
13        Plaintiffs,                 ) [Case No. 07-cv-02103 (LLS) in the
                                      ) U.S. D.C., S.D.N.Y]
14   v.                               )
                                      ) **DECLARATION OF MELINDA**
15 YOUTUBE, INC., ET AL.              ) **DUNN IN SUPPORT OF**
                                      ) **RESPONDENTS' OPPOSITION TO**
16        Defendants.                 ) **PLAINTIFFS' JOINT MOTION TO**
                                      ) **COMPEL PRODUCTION OF**
17                                    ) **DOCUMENTS PURSUANT TO**
                                      ) **SUBPOENAS TO ARTIS CAPITAL**
18                                    ) **MANAGEMENT L.P., SEQUOIA**
                                      ) **CAPITAL OPERATIONS LLC, AND**
19 _____  ) **TRIPLEPOINT CAPITAL LLC**
                                      )
20 THE FOOTBALL ASSOCIATION PREMIER   ) [Case No. 07-cv-03532 (LLS) in the
   LEAGUE LIMITED, ET AL.             ) U.S. D.C., S.D.N.Y]
21                                    )
          Plaintiffs,                 )
22                                    ) Date:       August 15, 2008
                                      ) Time:       9:00 a.m.
23   v.                               ) Courtroom:  10
                                      ) Judge:      Honorable Susan Illston
24 YOUTUBE, INC., ET AL.              )
                                      )
25        Defendants.                 )
   _____  )
26

27

28

DUNN DECLARATION ISO OPPOSITION TO
MOTION TO COMPEL
CASE NO. 08-MC-80129 (SI)

I, Melinda Dunn, hereby declare that:

1. I am the Chief Financial Officer of non-party Sequoia Capital Operations LLC ("Sequoia"). I have been employed at Sequoia since 1992. I submit this declaration in support of Respondents' Opposition to Plaintiffs' Joint Motion to Compel Pursuant to Subpoenas to Artis Capital Management L.P., Sequoia Capital Operations LLC, and TriplePoint Capital LLC. I have personal knowledge about the following facts, except where my knowledge is based upon information and belief which is so noted below.

2. Sequoia is a venture capital fund that often provides funding to founders and managers of technology companies.

3. Sequoia provided early stage funding to Google on May 26, 1999, and has had a relationship with Google ever since that time. Sequoia, along with certain other investors, was given the right to nominate and vote on two members of Google's Board of Directors. Michael Moritz, a managing member at Sequoia, occupied one of these Board seats from May 1999 to May 2007. No one else from Sequoia has served as a member of Google's Board of Directors. Since that investment, Sequoia has worked with Google on deals unrelated to the acquisition of YouTube.

4. Based on conversations with others at Sequoia, I am informed and believe that Sequoia began considering an investment in YouTube in approximately August of 2005.

5. Sequoia participated in two rounds of funding for YouTube. The seed round began in October of 2005 and became a Series A funding later that month. The Series A round of funding was completed on October 21, 2005.

6. A provision of the YouTube Series A financing agreement gave Sequoia, along with other Series A Preferred Stock holders, the right to nominate and vote on one member of YouTube's Board of Directors. Roelof Botha from Sequoia served as this board member from October of 2005 through November of 2006.

7. The second round of YouTube funding began in February of 2006 and became a Series B funding in March of 2006. The Series B round of funding closed on March 30, 2006.

8.  As an owner of YouTube stock, Sequoia was asked to approve the merger agreement between Google and YouTube. Sequoia did so contemporaneously with the approval given by the other investors.

9.  When the merger closed on November 13, 2006, Sequoia's entire financial interest in YouTube converted into shares of Google common stock. Mr. Botha's role as a member of YouTube's Board also ended on or around that date.

10.  Sequoia has already expended significant resources in complying with the discovery demands contained in the non-party subpoenas served on it in connection with cases filed by Viacom International, Inc. et al. and The Football Association Premier League et al. against YouTube pending in the United States District Court for the Southern District of New York ("Subpoenas").

11.  The process of searching for, collecting and processing documents in response to the Subpoenas was particularly time-intensive and disruptive, primarily because all of Sequoia's files, including email files dated prior to March 2007, are located on backup tapes. Accordingly, Sequoia undertook an onerous multi-step process. The process was headed by an outside IT consultant with whom I interacted and from whom my information on the process described below was obtained.

12.  Sequoia has purchased a software tool from Clearwell Systems ("Clearwell") to assist in managing its documents. In addition to the substantial up front cost of purchasing this software, Clearwell charges a per-search amount to conduct any particular search occasioned by different litigations or discovery demands.

13.  At the time Sequoia performed the search for documents responsive to the Subpoenas, Sequoia employed one IT consultant to work on Sequoia's premises for 40 hours a week to manage Sequoia's daily technical operations.

14.  In order to collect the Sequoia data for Clearwell to process in response to the subpoenas, Sequoia was first required to hire an additional IT consultant for the purpose of locating appropriate tapes and writing up instructions for how to extract the relevant data from the backup tapes, a process that took approximately ten hours.

15. Next, the on-site IT consultant then spent approximately 20 hours indexing the backup tapes and manually retrieving the data to be searched by Clearwell. During this time, Sequoia's on-site IT consultant was diverted from his usual tasks and as a result, had to work additional hours to manage daily operations so as to avoid delay and disruption to Sequoia's business.

16. The final step in this process was to provide the data collected from Sequoia's backup tapes to Clearwell for processing with their search tool. Two dedicated Clearwell employees spent one full week managing the search process and generating a report of the relevant documents to be produced. Sequoia's on-site IT consultant was on call to manage the Clearwell employees throughout the process, which again distracted him from dealing with Sequoia's daily technical demands.

17. Performing a second search and collection for additional data would require, at a minimum, following a similar process to the one described above. Specifically, Sequoia would be required to (i) hire at least one additional IT consultant, (ii) locate, index and search through its backup tapes, (iii) divert its on-site IT consultant from critical work functions, and disrupt Sequoia's business operations; (iv) pay an additional per-case charge to have Clearwell process Sequoia's data using their search utility. Sequoia itself has borne and will bear the costs of these retrieval activities and associated disruptions.

18. My understanding of the additional burden associated with a further search assumes that there would be some clearly defined universe for that search to cover – that is, a search for the documents of a specific set of people working on a particular deal. Without those limiting specifications, the process of retrieving and reviewing information from throughout the company would be overwhelming, could take up to a month and could cause disruption to the company's operations.

//
//
//
//

1    19.    Sequoia's U.S. offices are located in California.  All of Sequoia's U.S. employees
2 and documents are located in California as well.
3    I declare under penalty of perjury under the laws of the United States that the foregoing is
4 true and correct.
5    Executed on July 21 2008, at Menlo Park, California.

                                   _____
                                            Melinda Dunn