SHEARMAN & STERLING LLP
STEPHEN D. HIBBARD (Bar No. 177865)
  shibbard@shearman.com
EMILY V. GRIFFEN (Bar No. 209162)
  emily.griffen@shearman.com
525 Market Street, Suite 1500
San Francisco, CA 94105
Telephone:     415-616-1100
Facsimile:     415-616-1199

JENNER & BLOCK LLP
DONALD B. VERRILLI, JR. (*pro hac vice*)
  dverrilli@jenner.com
WILLIAM M. HOHENGARTEN (*pro hac vice*)
  whohengarten@jenner.com
SCOTT B. WILKENS (*pro hac vice*)
   swilkens@jenner.com
1099 New York Ave, N.W.
Suite 900
Washington, DC  20001-4412
Telephone:     202-639-6000
Facsimile:     202-639-6066
*Attorneys for Viacom Plaintiffs*

BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP
BLAIR A. NICHOLAS   (Bar No. 178428)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Telephone:     858-793-0070
Facsimile:     858-793-0323
Email:  blairn@blbglaw.com

BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP
DAVID R. HASSEL (*pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019
Telephone:     212-554-1400
Facsimile:     212-554-1444
Email:  davidh@blbglaw.com
*Attorneys for Premier League Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| VIACOM INTERNATIONAL INC., ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, INC., YOUTUBE, LLC, and GOOGLE INC.,<br><br>Defendants. | Case No.: 3:08-MC-80129-SI<br><br>**REPLY BRIEF IN SUPPORT OF JOINT MOTION TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO SUBPOENAS TO ARTIS CAPITAL MANAGEMENT L.P., SEQUOIA CAPITAL OPERATIONS LLC, AND TRIPLEPOINT CAPITAL LLC**<br><br>Date:   Aug. 15, 2008<br>Time:  9:00 a.m.<br>Ctrm:   Ten<br>Honorable Susan Illston |
| THE FOOTBALL ASSOCIATION PREMIER LEAGUE LIMITED, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, INC., ET AL.,<br><br>Defendants. | |

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ...................................................................................................................ii

**INTRODUCTION**........................................................................................................................................1

**ARGUMENT** ..............................................................................................................................................4

    **A.**    **Plaintiffs' Request Nos. 2, 8, 19, 20 and 21 Seek Plainly Relevant Documents.** ..................................................................................................................4

    **B.**    **Respondents' November 13, 2006 Date Limitation is Unwarranted.**..............................6

    **C.**    **Plaintiffs Need Not Wait Until Defendants Have Completed Their Production to Obtain Documents from Respondents.**......................................................6

    **D.**    **The Discovery Plaintiffs Seek Would Not Be Unduly Burdensome.**.............................11

    **E.**    **The Protective Order Entered in the Southern District of New York is Adequate.** ...............................................................................................................14

**CONCLUSION** ........................................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Braxton v. Farmer's Insurance Group.*, 209 F.R.D. 651 (N.D. Ala. 2002) ................................7

*Dibel v. Jenny Craig, Inc.*, No. 06 CV 2533, 2007 WL 2220987 (S.D. Cal. Aug. 1, 2007) ..........8

*EEOC v. Lexus of Serramonte*, 237 F.R.D. 220 (N.D. Cal. 2006) ................................7

*Gonzales v. Google, Inc.*, 234 F.R.D. 674 (N.D. Cal. 2006) ............................................................4

*Harris v. Wells*, No. B-89-391, 1990 WL 150445 (D. Conn. Sept. 5, 1990) ................................8

*Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975 (Fed. Cir. 1993) ............................................8

*Moon v. SCP Pool Corp.*, 232 F.R.D. 633 (C.D. Cal. 2005) ............................................................8

*In re Napster, Inc. Copyright Litigation*, 462 F. Supp. 2d 1060 (N.D. Cal. 2006)........................12

*JZ Buckingham Investments LLC v. United States,* 78 Fed. Cl. 15 (2007) ....................................7

*Seabulk Towing, Inc. v. Oceanografia S.A. de C.V.*, No. 01-3791, 2002 WL 188419 (E.D. La. Feb. 4, 2002) ................................................................................................................7

*Visto Corp. v. Smartner Information Systems, Ltd.*, No. 06-80339, 2007 WL 218771 (N.D. Cal. Jan. 29, 2007)................................................................................................................ 9-10

**STATUTES**

28 U.S.C. § 1927................................................................................................................1

Fed. R. Civ. P. 37(a)(5)(A) ................................................................................................1

Fed. R. Civ. P. 45(d)(1)(D) ................................................................................................11

# INTRODUCTION

Respondents forced Plaintiffs to move to compel on all document requests in Plaintiffs' subpoenas – even the 14 requests for which Respondents had already agreed to produce documents – by stating in a May 9, 2008 letter that "if Plaintiffs intend to move to compel, [Respondents] will not produce any documents unless ordered to do so."  Declaration of Scott B. Wilkens in Support of Joint Motion to Compel, filed June 20, 2008, Ex. GG at 5 (hereinafter "Wilkens June 20, 2008 Decl.").[1] In their opposition, however, Respondents partially reverse course and state that they will honor their prior agreement to produce documents responsive to 14 of Plaintiffs' requests.  Opp at 2 & n.1.[2] Astoundingly, Respondents deny that they reneged on their prior agreement and claim that Plaintiffs rather than Respondents have "backtracked" on prior commitments.  *Id.*; Opp. at 11.  Nothing could be further from the truth, as Plaintiffs' and Respondents' written correspondence makes clear.  Wilkens June 20, 2008 Decl. Exs. GG & WW.  Although Respondents' belated change of course has narrowed the disputed issues before the Court, Plaintiffs strenuously object to Respondents' improper litigation tactics, which forced Plaintiffs to incur the burden and expense of moving to compel on the many requests as to which Plaintiffs and Respondents had already reached agreement.[3]

Given the partial reversal in Respondents' position, the remaining areas of dispute are as follows: Respondents refuse to produce documents related to Google's acquisition of YouTube or any other entity's potential acquisition of YouTube (Request Nos. 19-21), documents related to potential investments in YouTube (Request No. 8), and documents related to Plaintiffs' lawsuits against Defendants (Request No. 2);  Respondents have imposed an unwarranted November 13, 2006 date restriction on their production of documents responsive to *any of the agreed-upon or disputed*

---

[1] Although Plaintiffs protested Respondents' improper refusal to honor prior agreements and warned Respondents that Plaintiffs would have no choice but to seek relief in court, Respondents refused to change their position.  Wilkens June 20, 2008 Decl. Ex. WW at 1.

[2] Respondents also belatedly reverse course with respect to their prior refusal to produce draft documents responsive to Plaintiffs' Subpoena Request No. 5.  Opp. at 2 n.2 & 10 n.6.

[3] Plaintiffs reserve the right to seek attorneys fees and costs and other appropriate sanctions pursuant to Fed. R. Civ. P. 37(a)(5)(A) and 28 U.S.C. § 1927.

*requests*; and Respondents refuse to produce any documents pursuant to the protective order entered in the New York litigation and insist on entry of a protective order in this Court.

Even as to these remaining areas of disagreement, Respondents' opposition misconstrues the scope of the parties' dispute in an apparent effort to exaggerate the burdens of searching for and producing responsive documents. Plaintiffs long ago substantially narrowed the scope of three of the five requests that remain in dispute – Requests Nos. 19, 20 and 21. Mot. at 7 n.3; 12 - 13; App. at A-20 - A24. However, Respondents claim in error that Plaintiffs have moved to compel on their original requests, and proceed to make overbreadth and burdensomeness arguments based on those original requests – arguments that are entirely moot in light of Plaintiffs' amendments to the requests. Opp. at 10, 18-21. With respect to Respondents' November 13, 2006 date limitation – which applies to *all* requests, not just the five requests that remain in dispute – Respondents claim in error that Plaintiffs are "demand[ing] documents extending all the way to *today*." Opp. 2 (emphasis in original). In fact, Plaintiffs informed Respondents orally and in writing that they were willing to agree to a date limitation "several months after the actions were filed but several months before the subpoenas were served," such as July 31, 2007. Wilkens June 20, 2008 Decl. Ex. WW at 3. Respondents rejected that offer, but Plaintiffs remain willing to honor it. Mot. 7 n.3.[4]

As explained in Plaintiffs' motion, the five disputed requests seek documents that are plainly relevant to Respondents' claims and Defendants' DMCA defense. Mot. 12-14. Rather than dispute the relevance of the sought-after documents, Respondents try to downplay their involvement with YouTube and their continuing financial interest in the New York litigation, without merit. Respondents concede that Sequoia had a "significant relationship" with YouTube, held a seat on YouTube's board, and was involved in "high-level decision-making." Opp. at 8-9, 16 n.11, 19. Although Respondents claim that Artis and TriplePoint were mere "passive investors," Respondents

---

[4] Given Respondents' certification that they possess no responsive documents predating February 15, 2005, Plaintiffs withdraw their objection to that beginning date limitation. *See* Opp. at 17 (Respondents "did not even *consider* investing in YouTube *until months after it was founded*." (emphasis in original)). Plaintiffs sought such a certification during the meet and confer process, but Respondents refused to provide it until *after* Plaintiffs moved to compel. Wilkens June 20, 2008 Decl. Ex. WW at 3.

1  do not deny that Artis and TriplePoint received non-public, inside information from YouTube prior to
2  and after making their investment.  *See* Declaration of David Lamond in Support of Respondents'
3  Opposition ("Lamond Decl.") ¶ 6.  Moreover, Respondents concede that Artis was asked to approve
4  the Google/YouTube merger agreement and that TriplePoint conducted an analysis of the agreement.
5  *Id.* ¶ 7; Declaration of Kevin W. Thorne in Support of Respondents' Opposition ("Thorne Decl.") ¶
6  9.  Although Respondents claim that Plaintiffs exaggerate the significance of the indemnification
7  provisions in the Google/YouTube merger agreement, they do not deny that those provisions give
8  Respondents an ongoing financial interest in the New York litigation.

9  Respondents take the untenable position that discovery against Respondents can proceed only
10 after Defendants have completed their production – which Defendants claim may take another year –
11 and only if Plaintiffs can show that Respondents possess relevant documents that Defendants have
12 failed to produce.  This extreme position is unsupported by the cases Respondents cite, ignores that
13 Respondents are certain to possess documents that Defendants do not possess, and contradicts the
14 conduct of Respondents' and Defendants' common counsel, who have subpoenaed numerous third
15 parties for documents that are in the possession of the *Viacom* Plaintiffs.  Given that Respondents are
16 far from disinterested third parties and have reaped enormous profits from YouTube's massive
17 copyright infringement, it is more than reasonable to expect Respondents to search for and produce
18 responsive documents now without waiting for Defendants to complete their production.

19 Finally, Respondents claim that a protective order must be entered in this Court before
20 documents are produced, even though Respondents do not identify a single shortcoming in the New
21 York protective order, and even though they concede that the New York court is in the best position
22 to evaluate Plaintiffs' subpoenas.  As a magistrate judge of this Court recently held in rejecting entry
23 of a third party protective order related to the New York litigation, Rule 26 requires a protective
24 order motion to be made in the court where the action is pending, and it would be "improper" for a
25 protective order to require "this court to dictate to another court the procedures and standards to be
26 applied to protect confidential information." Reply Declaration of Scott B. Wilkens, filed herewith
27 ("Wilkens Aug. 4, 2008 Decl.") ¶ 6 & Ex. C.
28

# ARGUMENT

## A. Plaintiffs' Request Nos. 2, 8, 19, 20 and 21 Seek Plainly Relevant Documents.

Respondents do not deny that the standard of relevance under Rules 26 and 45 is broad, or that when a court's "only connection with a case is supervision of discovery ancillary to an action in another district," the court "should be especially hesitant to pass judgment of what constitutes relevant evidence," and "[w]here relevance is in doubt[,] . . . should be permissive." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 681 (N.D. Cal. 2006) (quotation marks omitted).[5] As shown here and in Plaintiffs' motion at 12-14, Request Nos. 2, 8, and 19-21 are clearly relevant.

Request No. 2:   In their opposition, Respondents do not address the relevance of this request, which seeks documents concerning the *Viacom* and *Premier League* Actions.  *See* Opp. at 16-19. Defendants should therefore be deemed to have conceded the relevance of Request No. 2.

Request No. 8:  Respondents do not dispute that documents concerning potential investments in YouTube are relevant.  They make the much more limited argument that Respondents' "*views* on any such potential investments" are irrelevant.  Opp. at 18 (emphasis added).  Plaintiffs' request is not limited to Respondents' views, but rather seeks all documents concerning potential investments in YouTube.  Documents relating to potential investments in YouTube that never came to fruition – including but not limited to documents indicating Respondents' views on those potential investments – may demonstrate Defendants' knowledge of and financial interest in infringement, particularly in cases where potential investors decided not to invest in light of the widespread copyright infringement occurring on YouTube.  They may also refute Defendants' claims that "a third party reviewer looking at a video, could not determine" whether the video infringes copyright.  Opp. at 5. These documents are relevant because the may memorialize oral and/or written information provided by Defendants to Respondents.  Moreover, Respondents' views may be attributable to Defendants to the extent that Respondents were acting as Defendants' agents in communicating with potential investors.  Mot. at 14 and 23.

---

[5] Indeed, Respondents state that the New York court is "in a considerably better position to evaluate the legitimacy" of Plaintiffs' requests.  Opp. at 3.

Requests 19-21: Respondents do not dispute the relevance of documents pertaining to Google's acquisition of YouTube and other potential acquisitions of YouTube. Instead, Respondents try to downplay their involvement in YouTube and in the acquisition, claiming that TriplePoint and Artis were mere "passive investors," that Sequoia's representative on Google's board of directors recused himself from voting on the acquisition, and that Respondents' indemnification obligations under the merger agreement are insignificant. Opp. at 18-19. These arguments have no merit.

With respect to Sequoia, Respondents do not dispute that Sequoia's representative on the YouTube board, Roelof Botha, was intimately involved in Google's acquisition of YouTube and that Mr. Botha would have been substantially involved in earlier potential acquisitions of YouTube. Respondents' make the nonsensical claim that Plaintiffs must seek Mr. Botha's documents from YouTube rather than from Sequoia, where Mr. Botha is a partner. As documents attached to the motion to compel make plain, Mr. Botha used his offices and facilities at Sequoia to conduct YouTube business, including communicating with third parties on YouTube's behalf. Wilkens June 20, 2008 Decl. Ex. U-X. There is no indication whatsoever that Mr. Botha had or used an office or email account at YouTube. Furthermore, although Respondents claim that Sequoia's representative on the Google board, Michael Moritz, recused himself from voting on Google's acquisition of YouTube, Mr. Moritz undoubtedly obtained responsive documents as a Google board member.[6]

With respect to Artis, Respondents concede that "Artis received periodic reports from YouTube about YouTube's financial and business progress," that "Artis was asked to approve the merger agreement," and that Artis in fact "voted to approve the merger." Opp. at 7, 19. As a result, Artis undoubtedly obtained responsive information. Furthermore, as indemnifying parties under the Google/YouTube merger agreement, Respondents are all particularly likely to possess responsive information with respect to Request Nos. 19 and 20, which seek "reports, analyses and assessments concerning Google's acquisition of YouTube" including any such documents that "refer to actual or proposed indemnification or an action or proposed litigation reserve in relation to copyright

---

[6] As with Mr. Botha, Respondents' make the absurd claim that Plaintiffs must seek Mr. Moritz's documents from Google rather than Sequoia. Opp. at 17 n.12.

infringement lawsuits that might be brought against Defendants in relation to the YouTube website." Mot. App. at A-20 - A-22. Indeed, TriplePoint admits that it "perform[ed] an internal evaluation of the shareholder obligations included in the merger agreement." Thorne Decl. ¶ 3. Documents concerning the indemnification provisions are likely to lead to the discovery of admissible evidence regarding Defendants' knowledge of the infringement occurring on YouTube.

### B. Respondents' November 13, 2006 Date Limitation is Unwarranted.

Contrary to Respondents' assertions, Plaintiffs are not "deman[ing] documents extending all the way to *today*," or even up to September 2007, when the subpoenas were issued. Opp. at 2 (emphasis in original). As noted above, Plaintiffs offered a compromise date limitation of July 31, 2007. *See supra* at 2; Wilkens June 20, 2008 Decl. Ex. WW. Although Respondents rejected that compromise and improperly withheld documents they had previously agreed to produce, *see supra* at 1, Plaintiffs remain willing to accept a July 31, 2007 date limitation.

Respondents utterly fail to justify a November 13, 2006 date limitation. They do not deny that they have responsive documents after that date. The claim that Respondents "became just like any other Google shareholder" when Google acquired YouTube is simply untrue. As Respondents concede, Sequoia held a seat on Google's nine-member board of directors until May 2007 – six months after the November 13, 2006 date limitation – making Sequoia a very privileged Google shareholder indeed. Opp. at 17 n. 12. Respondents also concede that they and approximately 35 other former YouTube shareholders have continuing indemnification obligations to Google under the Google/YouTube merger agreement. Opp. at 16, n.11. These indemnification obligations distinguish Respondents and the 35 other former YouTube shareholders from the many thousands of ordinary Google shareholders. In light of Sequoia's continuing seat on Google's board, Respondents' ongoing indemnification obligations, and Respondents' longstanding relationship with YouTube, Respondents are certain to possess responsive documents that postdate November 13, 2006.

### C. Plaintiffs Need Not Wait Until Defendants Have Completed Their Production to Obtain Documents from Respondents.

Respondents take the untenable position that "Plaintiffs must first exhaust the production process with YouTube and Google and trouble the Non-Parties if, and only if, they can prove some

1  relevant documents remain unavailable to them." Opp. at 14.  That position is not supported by the
2  cases cited by Respondents and is directly contradicted by the conduct of Respondents' counsel, who
3  represent Defendants in the New York litigation and who have subpoenaed numerous third parties for
4  documents in the possession of the *Viacom* Plaintiffs.
5      As an initial matter, none of the cases cited by Respondents involves a subpoenaed nonparty
6  with an ongoing, direct financial interest in the underlying litigation, as is the case here.  Moreover,
7  none of the cases involves a subpoenaed nonparty with direct operational involvement in one of the
8  parties, as is the case with Respondent Sequoia.  These factors make it all the more reasonable to
9  expect Respondents to search for and produce documents responsive to Plaintiffs' subpoenas.  Courts
10 frequently look beyond the formal "nonparty" status of a subpoenaed entity in considering whether
11 the entity should be required to produce subpoenaed documents.  *E.g., Seabulk Towing, Inc. v.*
12 *Oceanografia S.A. de C.V.*, No. 01-3791, 2002 WL 188419, at *3 & n.4 (E.D. La. Feb. 4, 2002)
13 (holding that "[b]ecause of the close business relationship between [the subpoenaed nonparty] and
14 [the defendant] . . . [the plaintiff] should not be required to wait to see what, if anything, [the
15 defendant] produces before seeking production from [the nonparty]"); *JZ Buckingham Investments*
16 *LLC v. United States,* 78 Fed. Cl. 15, 26 (2007) (noting that subpoenaed entity was not "a complete
17 stranger to the litigation" even though it was nominally a "nonparty").
18     Two of the cases cited by Respondents are readily distinguishable because they involved
19 motions to quash by a party to the litigation, where the moving party represented to the court that it
20 possessed the subpoenaed documents and would produce them.  *See Braxton v. Farmer's Ins.*
21 *Group.*, 209 F.R.D. 651, 653 (N.D. Ala. 2002) (defendant represented that "it [was] fully able to
22 locate and produce" the "email messages and other correspondence" sought by plaintiff's
23 subpoenas); *EEOC v. Lexus of Serramonte*, 237 F.R.D. 220, 223 (N.D. Cal. 2006) (plaintiff
24 submitted an affidavit representing that it would produce the relevant documents sought by
25 defendant's subpoenas).  Despite being represented by the same counsel as Respondents, Defendants
26 Google and YouTube have not moved to quash, nor have they submitted declarations that they
27 possess and will produce all relevant, responsive documents sought by Plaintiffs' subpoenas.
28

Other cases cited by Respondents are inapposite because they involved subpoenas seeking a discreet set of documents or files that were known to be in the possession of the opposing party, but which were sought by subpoena to a nonparty. *See Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) (settlement agreement between nonparty and plaintiff was also in the possession of plaintiff, but defendant had moved to compel nonparty without first attempting to obtain settlement agreement from plaintiff); *Dibel v. Jenny Craig, Inc.*, No. 06 CV 2533, 2007 WL 2220987, at *1 - *2 & n.2 (S.D. Cal. Aug. 1, 2007) (plaintiff sought a discrete set of "discovery responses, demands and documents exchanged" between the defendant and other parties in a related state-court action, but instead of "propounding customary and appropriate Rule 34 requests" to the defendant, the plaintiff issued subpoenas to two third party law firms involved in the state court action). Here, by contrast, Plaintiffs are not seeking a discreet set of documents known to be in the possession of Defendants; instead, Plaintiffs are seeking documents within various subject matter areas, without knowing whether any particular document in Respondents' possession is also in the possession of Defendants. Moreover, Plaintiffs did not issue subpoenas to third parties in lieu of Rule 34 document requests to Defendants. As common counsel for Respondents and Plaintiffs are well aware, Plaintiffs are vigorously pursuing Rule 34 discovery against Defendants.[7]

It is entirely reasonable for Plaintiffs to seek documents from Respondents before waiting for Defendants to complete their production. With respect to Respondents' communications with Defendants, Respondents do not genuinely dispute that YouTube employees used personal rather than corporate email to conduct company business, or that YouTube was first housed in a garage and subsequently moved to various short-term locations – including the offices of Sequoia – before being acquired by Google. Opp. at 14; Mot. at 22; Wilkens June 20, 2008 Decl. ¶¶ 49-51. Under these

---

[7] The remaining cases cited by Respondents are also readily distinguishable. *See Harris v. Wells*, No. B-89-391, 1990 WL 150445, at *4 (D. Conn. Sept. 5, 1990) (granting plaintiffs' motion for a protective order barring defendant from obtaining discovery from 23 subpoenaed non-parties, where court in the very same ruling ordered plaintiffs to produce the documents sought by the subpoenas); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637-38 (C.D. Cal. 2005) (granting defendants' motion to quash where subpoenas sought documents over a ten year or greater period regarding the nonparty's sale of certain products worldwide, rather than just the region relevant to the lawsuit).

circumstances, it is reasonable to believe that Respondents – established providers of venture capital and venture debt – retained better records of their communications with YouTube than YouTube itself retained. Respondents also do not dispute that they possess records of oral communications with Defendants that Defendants do not possess, as evidenced by handwritten notes produced by TriplePoint. Wilkens June 20, 2008 Decl. ¶ 52 & Ex. SS. Respondents never explain what further showing Plaintiffs could make to establish that Respondents possess communications not retained by Defendants, even if Plaintiffs wait until Defendants' document production is complete. Plaintiffs will have no way to determine what additional communications Respondents possess except by receiving Respondents' documents and comparing them to Defendants'.

A comparison of TriplePoint's limited production against the more than one million pages Defendants have produced reveals numerous relevant documents in TriplePoint's production that should appear in Defendants' production but do not, most notably a March 2006 presentation by YouTube, attached as Ex. MM to the Wilkens June 20, 2008 Decl., which bears directly on several elements of Plaintiffs' affirmative claims and Defendants' DMCA defense. Mot. 16-19. Furthermore, Defendants have failed to produce executed versions of TriplePoint's lease and warrant agreements with YouTube, and YouTube internal financial data provided to TriplePoint. Wilkens Aug. 4, 2008 Decl. ¶ 2; Thorne Decl. ¶¶ 4-6 (describing lease and warrant agreements).

With respect to Respondents' internal analyses and communications with third parties, Respondents concede that these documents are not in Defendants' possession. Instead, Respondents claim that such documents are irrelevant under *Visto Corp. v. Smartner Information Systems, Ltd.*, No. 06-80339, 2007 WL 218771 (N.D. Cal. Jan. 29, 2007). Respondents misread *Visto* and fail to acknowledge the obvious differences between that case and the present one. *Visto* does not address the relevance of a venture capital firms' communications with third parties. More fundamentally, in *Visto* the moving party failed to "explain how or why discovery into a venture capital firm's internal investment analyses is 'reasonably calculated to lead to the discovery of admissible evidence,'" and instead relied on "bare assertions" that the subpoenaed documents were "plainly relevant." *Visto*,

1   2007 WL 218771, at *4.  Indeed, the entire motion to compel in *Visto* was just one page in length and
2   made wholly conclusory arguments regarding relevance.  Wilkens Aug. 4, 2008 Decl. ¶ 3, Ex. A.
3         Respondents are simply incorrect when they claim that Plaintiffs "offer no better explanation
4   than the subpoenaing party in *Visto* for why the Respondents' internal analyses of YouTube would be
5   relevant to their copyright infringement cases in New York."  Opp. at 16.  In the motion to compel,
6   Plaintiffs explained that their secondary liability claims – for inducement of copyright infringement,
7   contributory infringement, and vicarious liability – and Defendants' main defense under § 512(c) of
8   the DMCA, hinge on Defendants' intent to infringe, knowledge of infringement, conduct contributing
9   to or facilitating infringement, financial interest in infringing activity, and right and ability to prevent
10  infringement.  Mot. at 10-12.  Plaintiffs further explained that these are all issues about which
11  Respondents, as early, key investors in YouTube, are likely to have obtained information from
12  Defendants through oral communications and otherwise, which Respondents then incorporated into
13  their analyses.  Such documents exclusively in Respondents' possession may be directly admissible
14  evidence containing admissions from Defendants (or Respondents acting as Defendants' agents), and
15  may also, at a minimum, lead to the discovery of admissible evidence.  Mot. at 23.  Internal
16  documents may also refute Defendants' claims that "a third party reviewer looking at a video, could
17  not determine" whether the video infringes copyright.  Opp. at 5.  The notion that Respondents are no
18  different from third party "law professors, journalists and even Viacom's shareholders or
19  indemnitors" is simply preposterous.  Opp. at 16.
20        While finding no support in the cited cases, Respondents' extreme position is also
21  inconsistent with Respondents' and Defendants' common counsel's own actions in the New York
22  litigation, which include issuing numerous subpoenas to third parties seeking documents that are
23  likely to be in the possession of Plaintiffs.  In addition to issuing a subpoena to third party Auditude
24  seeking documents in Viacom's possession, Mot. at 24 n.7, Defendants have issued similar

1   subpoenas to many other entities.[8]  In opposition to Plaintiffs' motion, Respondents' counsel makes
2   no attempt to explain this obvious contradiction.

### D.  The Discovery Plaintiffs Seek Would Not Be Unduly Burdensome.

Requiring Respondents to produce documents responsive to all requests for the period November 13, 2006 through July 31, 2007, and requiring them to produce documents responsive to Request Nos. 2, 8, 19, 20, and 21, would not be unduly burdensome in light of Respondents' substantial role in financing YouTube, and in light of the enormous windfall that Respondents received when Google acquired YouTube.  Although Respondents are not named parties, they have a direct financial interest in the New York litigation and have profited enormously from the rampant infringement of Plaintiffs' copyrighted works on YouTube.  In addition, Sequoia was directly involved in the operation of YouTube and acted as YouTube's agent.  Against this backdrop, Respondents have utterly failed to "show that the information is not reasonably accessible because of undue burden or cost."  Fed. R. Civ. P. 45(d)(1)(D).

Respondents claim that they should not be required to search for and produce documents for time period and requests that remain in dispute because "[a]t Plaintiffs insistence, [Respondents] long ago conducted time-consuming and burdensome searches" responsive to the requests as to which Plaintiffs and Respondents reached agreement.  Opp. at 2 & 20.  It is simply untrue that Plaintiffs asked Respondents to conduct a search limited to requests as to which Plaintiffs and Respondents had reached agreement.  *See* Rubin Decl. Ex. E.  Respondents unilaterally decided to conduct a self-serving, limited search for documents that apparently did not include the time period or requests that remain in dispute.  During the seven months of the meet and confer process, Respondents never informed Plaintiffs that they were engaging in such a limited search or that Respondents would later use that search as a basis for opposing further discovery.  *See* Wilkens June 20, 2008 Decl. Ex. FF, at 4.  Furthermore, until filing their opposition, Respondents never informed Plaintiffs of any of the

---

[8] They include Iced Media Ltd., MediaDefender, Inc., BayTSP.com, Deluxe Laboratories, Inc., and JL Media Inc.  All of the subpoenas seek documents likely to be in Viacom's possession, including all communications between the subpoenaed entity and Viacom.  Wilkens Aug. 4, 2008 Decl. ¶ 5.

information set forth in their opposition papers regarding the purported burdens they have incurred in their search for documents to date, including, for example, Sequoia's restoration of backup tapes. Apparently, Respondents believed they would obtain a tactical advantage by withholding the information until opposing Plaintiffs' motion to compel.

Respondents cannot now rely on their earlier self-serving search for limited categories of documents to prevent the legitimate discovery Plaintiffs seek.  Respondents had every opportunity to search for documents responsive to the disputed requests at the same time that they were searching for documents responsive to other requests.  Documents responsive to the disputed requests could have been set aside pending the outcome of the meet and confer process.  Respondents' failure to take this reasonable approach should not prejudice Plaintiffs' ability to obtain important discovery.[9]

Furthermore, Respondents' claims of undue burden appear to be exaggerated.  With respect to Sequoia, Respondents inform Plaintiffs for the first time that Sequoia's pre-March 2007 electronic files, including emails, are retained only on backup tapes.  Sequoia has been on notice since at least April 6, 2007, of its obligation to preserve all documents relating to the *Viacom* Action in an accessible form.  Wilkens Aug. 4, 2008 Decl. at ¶ 4; *see also In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1068 (N.D. Cal. 2006) (noting that venture capital investor in Napster had a legal duty to preserve documents "as an investor in a company that was embroiled in litigation, and as a third party to that litigation that had been served with a subpoena").  Sequoia's decision to transfer data onto backup tapes was made at its own peril and is not a proper basis for resisting discovery.

Sequoia has apparently already located and restored back-up tapes in connection with its earlier search and has loaded the restored data into a live system that can be searched for documents by keyword. Declaration of Melinda Dunn in Support of Respondents' Opposition ("Dunn Decl.") ¶¶ 11-15.  Unquestionably, that repository of restored emails – and the live emails from March 2007

---

[9] In their opposition, Respondents agree for the first time to produce draft documents encompassed by Request No. 5. Opp. at 10, n. 6.  Respondents fail to explain why searching for and producing these drafts would be any less burdensome than searching for and producing documents responsive to the remaining disputed requests.  Any burden could be minimized if Respondents were to search for documents responsive to Request No. 5 and Request Nos. 2, 8, and 19-21 at the same time.

1  through July 31, 2007 that Sequoia has not transferred to backup tapes – should be searched for
2  documents responsive to the disputed requests.  Moreover, even if Sequoia would have to restore
3  additional backup tapes, that would hardly be unduly burdensome in light of Sequoia's failure to
4  preserve the data in a readily accessible form, Sequoia's direct involvement in the operation of
5  YouTube, and the hundreds of millions of dollars Sequoia reaped from its investment in YouTube.
6  Sequoia has failed to submit any information regarding its protocol for transferring data to backup
7  tapes, the number and type of backup tapes that would need to be restored if Plaintiffs' motion were
8  granted, how long it would take to restore that number of backup tapes, or how much it would cost.[10]

9  With respect to Artis, Respondents reveal for the first time that *the only search Artis has
10 conducted to date is a search of hard copy files, which lasted only one business day.*  Declaration of
11 Robert Riemer in Support of Respondents' Opposition ("Riemer Decl.") ¶ 4.  Artis has not yet
12 searched any electronic files, even as to the requests for which Artis long ago agreed to produce
13 documents.  Artis's highly circumscribed search of hard copy files is grossly inadequate.  Artis
14 should be required to search its hard copy and electronic files for documents responsive to the
15 agreed-upon and disputed requests through July 31, 2007, particularly given Artis's admission that
16 only three Artis employees were involved in Artis's investment in YouTube.  Riemer Decl. ¶ 10.[11]

17 Lastly, regarding TriplePoint, Respondents claim that "a second search would require
18 significant additional time [from] a senior member of its staff[]."  Opp at 20.  This generalized claim
19 of burden is insufficient to withstand Plaintiffs' legitimate and reasonable discovery demands,

---

[10] In their opposition, Respondents claim that it would take "at least 30 hours of on-site IT consultant time, plus another week of vendor time as managed by an IT consultant, to recreate and search documents from backup tapes," citing Dunn Decl. ¶ 17.  Opp. at 20.  Ms. Dunn's declaration does not indicate how much IT consultant or vendor time would be involved, or even how many backup tapes would need to be restored if Plaintiffs' motion were granted.

[11] With respect to emails dated after June 21, 2006, which according to Artis are still maintained on a live system, Artis estimates that it would take only "four to five person-days of 10 hours per day," to search those emails.  Riemer Decl. ¶ 10.  Although Artis claims any emails predating June 21, 2006, "*would* reside on backup tapes," Artis fails to indicate whether such emails *in fact reside only on backup tapes*, or whether employees have kept live copies on their computers.  Furthermore, Artis, like Sequoia, has failed to submit any information regarding its protocol for transferring data to backup tapes, the number and type of backup tapes that would need to be restored if Plaintiffs' motion were granted, the time needed to restore them, or the cost.  *See* Riemer Decl. ¶¶ 5-7.

1  particularly given TriplePoint's admission that only four TriplePoint employees were involved in
2  TriplePoint's investment in YouTube.  Thorne Decl. ¶ 16.  TriplePoint and the other Respondents
3  made the choice to conduct a limited search for documents responsive to certain requests, and
4  accepted the risk that they would later have to conduct a more complete search.

    **E.**  **The Protective Order Entered in the Southern District of New York is Adequate.**

Respondents claim that "the presiding Court" in the Southern District of New York is "in a considerably better position" than this Court "to review the legitimacy and breadth" of the document subpoenas, Opp. at 3, and yet make the contradictory claim that any production of documents by Respondents "must be governed by a suitable protective order entered by this Court." Opp. at 21. Respondents' position is without merit.

Respondents do not contend that the New York protective order is in any way deficient, which is unsurprising given that Respondents' and Defendants' common counsel negotiated and stipulated to the terms of that protective order.  Instead, Respondents make the baseless assertion that because the subpoenas were issued from this Court and production will take place in California, this Court "should therefore address any issues arising from the subsequent production." Opp. at 21.  As a magistrate judge of this Court recently held in denying Defendants' and third party Auditude's request for entry of a protective order governing Auditude's document production, Rule 26 requires that a protective order motion be made "*in the court where the action is pending*," and it would be "improper" for a protective order to require "this court to dictate to another court the procedures and standards to be applied to protect confidential information."  Wilkens Aug. 4, 2008 Decl. ¶ 6, Ex. C.[12]

Respondents also make the specious argument that a protective order must be entered in this Court because, "Plaintiffs have already violated the protective order entered in New York." Opp. at 21.  That dispute centered on a submission of ten documents under seal to the Ninth Circuit without

---

[12] Respondents' claim that they "should not have to bear the considerable expense and burden" of enforcing the New York protective order is without merit.  Opp. at 21.  Common counsel for Respondents and Defendants are already regularly litigating in the New York court.  Any incremental burden of litigating protective order issues in New York is more than offset by the benefit of the New York court's familiarity with the case.

any public disclosure, in a case involving the same parties and claims as the *Premier League* Action pending in New York. Those documents were submitted to the Ninth Circuit only after the *Premier League* Plaintiffs provided advance notice to Defendants and the two producing non-parties. Defendants did not object to the disclosure until after the filing was submitted to the Ninth Circuit. Although the New York court found a breach of the Protective Order, the Court stated it did "not think the question [was] plain and simple" Wilkens Aug. 4, 2008 Decl. ¶ 7 Ex. D. at Tr. 27-28; Defendants' own lawyer acknowledged it was determined to be "a close call" *Id.* ¶ 8 Ex. E. at Tr. 19-20; and Defendants' application for sanctions was rejected. Indeed, the New York court ultimately ruled that Defendants had not countered *Premier Leage* Plaintiffs' analysis showing why the documents are not confidential, and ruled that the documents could be filed publicly in the Ninth Circuit if that court declines to grant a motion to file under seal. *Id.* ¶ 8 Ex. E. at Tr. 28-29.[13] This episode shows that the New York court is well equipped to promptly address confidentiality disputes, and that no basis exists for requiring another court to spend resources handling confidentiality matters under a new protective order.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Joint Motion to Compel.

Respectfully submitted,

Dated: August 4, 2008         SHEARMAN & STERLING LLP

By:      /s/ Stephen D. Hibbard
                Stephen D. Hibbard

---

[13] Respondents also misconstrue the dispute by implying that Plaintiffs in both the *Viacom* and *Premier League* Actions were involved, when the dispute did not involve the *Viacom* Plaintiffs. Opp. at 21 (stating repeatedly that "Plaintiffs violated the protected order").

DONALD B. VERRILLI, JR.
WILLIAM M. HOHENGARTEN
SCOTT B. WILKENS
   JENNER & BLOCK LLP

Attorneys for Viacom Plaintiffs

Dated: August 4, 2008

BERNSTEIN, LITOWITZ, BERGER & GROSSMANN LLP

By:    /s/ David R. Hassel
       David R. Hassel

Attorneys for Premier League Plaintiffs

   I, Stephen D. Hibbard, am the ECF User whose ID and password are being used to file this document. In compliance with General Order 45, X.B., I hereby attest that the signatory identified above has concurred in this filing.