**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIACOM INTERNATIONAL, INC., COMEDY PARTNERS, COUNTRY MUSIC TELEVISION, INC., PARAMOUNT PICTURES CORPORATION and BLACK ENTERTAINMENT TELEVISION, LLC,<br><br>    Plaintiffs<br>  v.<br><br>YOUTUBE, INC., YOUTUBE, LLC, and GOOGLE, INC.,<br><br>    Defendants. | No. C 08-80129 SI<br><br>**ORDER COMPELLING DOCUMENT PRODUCTION FROM NONPARTIES ARTIS, TRIPLEPOINT, AND SEQUOIA** |

On August 15, 2008, the Court heard argument on plaintiffs' joint motion to compel production of documents by non-party respondents Artis Capital Management, L.P., Sequoia Capital Operations LLC and TriplePoint Capital LLC. Having carefully considered the moving and opposing papers and the arguments of counsel, and for the reasons set out below, the motion is GRANTED in part and DENIED in part.

**BACKGROUND**

Defendant YouTube created a website, YouTube.com, in February 15, 2005 that allows users to post videos online. Once posted, these videos can be viewed by anyone with a capable computer and internet connection. Some of these videos may contain copyrighted material.

Viacom and other plaintiffs are copyright owners. They claim that their copyrighted material was posted on YouTube.com in violation of their exclusive rights. Plaintiffs filed two separate lawsuits in the Southern District of New York on March 13 and May 4, 2007 alleging copyright infringement under

theories of inducement, contributory infringement, and vicarious liability.

Plaintiffs' theories of copyright infringement hinge on whether defendants intended to induce infringement, had knowledge of the infringing activity, and had a direct financial interest in such activity. Defendants could be liable for *inducement* if they operated YouTube.com "with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement." *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 919 (2005). "[O]ne who, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another, may be held liable as a '*contributory*' *infringer*." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171 (9th Cir. 2007) (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)) (emphasis added). Defendants may be liable for *vicarious infringement* if they "profit[] from direct infringement while declining to exercise a right to stop or limit it." *Grokster*, 545 U.S. at 930.

In an attempt to establish defendants' intent, knowledge, and financial interest regarding the alleged copyright infringement, plaintiffs seek documents from respondents Artis, TriplePoint, and Sequoia. Respondents are venture capital firms who were involved with defendant YouTube in its initial rounds of investment and eventual acquisition by defendant Google, which was effective on November 13, 2006. All respondents received significant quantities of Google shares when Google acquired YouTube and also indemnified Google for the outcomes of copyright infringement suits. Other than these commonalities, respondents' roles regarding YouTube differed significantly.

Sequoia first considered investing in YouTube in August 2005. It invested in YouTube in October 2005 and March 2006, had delegates at YouTube board meetings, and played an important role in Google's acquisition of YouTube because it had members on both companies' boards. As a result of this acquisition, Sequoia received Google shares valued at $504 million. Moreover, Sequoia retained a seat on Google's board of directors until shortly after plaintiffs filed the instant lawsuits.

Artis played a lesser, but still significant, role in YouTube's success. It first considered investing in YouTube in January 2006, and had a part in reviewing and approving the merger with Google. Artis received Google shares valued at $83 million as a result of this acquisition.

TriplePoint had the least involvement of respondents, but still financed YouTube and received

Google shares of $6.4 million after the merger. TriplePoint leased computer servers to YouTube in exchange for stock options. In preparation for the merger, TriplePoint "performed an internal evaluation of the shareholder obligations included in the merger agreement." TriplePoint did not, however, play a role in the decision-making (including the merger) at YouTube.

Plaintiffs requested significant discovery from all three respondents. The parties reached preliminary agreements with respect to all discovery requests except numbers 8, 19, 20, and 21.[1] Request 8 seeks documents pertaining to any actual or potential investments in YouTube. Request 19 asks for documents concerning the Google acquisition of YouTube. Request 20 seeks documents concerning actual or proposed indemnification for copyright infringement relating to this merger. Request 21 seeks documents pertaining to any potential acquisitions of or mergers with YouTube. Plaintiffs now move to compel respondents to produce documents pursuant to requests 8, 19, 20, and 21. Plaintiffs also move to compel production for other requests within a relevant date range.

## DISCUSSION

### I. Requests from third parties

Respondents contend that plaintiffs should not be permitted to request from non-party respondents documents that are likely to be in defendants' possession. Respondents argue that defendants, as parties to the dispute, should bear the cost of requests for documents that are in the possession of both respondents and defendants. Plaintiffs contend that respondents have documents which defendants do not or might not have due to poor initial record keeping[2] by defendant YouTube.

Respondents cite six cases in support of the proposition that plaintiffs may not request from respondents documents that are likely to be in defendants' possession. But none of these cases deals

---

[1] The preliminary discussions between respondents and plaintiffs did not yield agreement on timing. *See infra* Discussion Part III. The remaining dispute with respect to request number 5 was resolved in respondents' opposition brief, by their agreement to produce drafts.

[2] In YouTube's early days, it was housed initially in a garage, then in various short-term offices, including offices owned by respondent Sequoia. Plaintiffs contend that this transient nature and the haphazard methods of early email correspondence call the completeness of YouTube's document record into question.

3

with a situation where respondents might be in possession of responsive documents belonging to a non-well-defined set (i.e., a set whose completeness is not readily verifiable) that defendants no longer possess or never possessed. Two of the cases featured document production requests to a nonparty where a party represented to the court that it possessed and would produce the documents in question. *See Braxton v. Farmer's Ins. Group*, 209 F.R.D. 651, 653 (N.D. Ala. 2002) (quashing party alleged that it was "fully able to locate and produce email messages" requested from the nonparty, and requesting party made no showing that the quashing party's production would be inadequate); *EEOC v. Serramonte*, 237 F.R.D. 220, 223 (N.D. Cal. 2006) (quashing party submitted a declaration stating that it would produce all documents necessary to resolve a factual question, rendering production from nonparty irrelevant and duplicative). Defendants YouTube and Google have not made any such representations to this Court, so these cases are inapposite.

Two more of respondents' cases address discovery disputes over well-defined sets of documents that could be requested from a party to the lawsuit instead of a nonparty. *See Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) (defendant moved to compel a nonparty to produce a settlement agreement reached by plaintiff and the nonparty without waiting for the plaintiff to produce the agreement); *Dibel v. Jenny Craig, Inc.*, No. 06 CV 2533, 2007 WL 2220987, at *1 n.2 , *2 (S.D. Cal. Aug. 1, 2007) (plaintiff served nonparties with a discovery request for a well-defined set of discovery documents and exchanges from a previous lawsuit involving defendant, but plaintiff did not explore less burdensome options before requesting production from nonparties). Viacom and other plaintiffs request a set of documents that is not well-defined; there is no way to determine if all communications between YouTube and respondents have been produced simply by looking at YouTube's production. Accordingly, *Haworth* and *Dibel* are not pertinent.

Respondents' final cases are also distinguishable because they only illustrate isolated circumstances where the discovery requests to nonparties were so broad and harmful that the courts required them to first seek discovery from parties to the dispute. *See Harris v. Wells*, No. B-89-391, 1990 WL 150445, at *4 (D. Conn. Sept. 5, 1990) (defendant's discovery requests to 23 nonparties were barred until plaintiffs produced the requested documents because they were massively duplicative and would likely cause harm to plaintiffs' business); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637-38 (C.D.

4

Cal. 2005) (quashing plaintiff's subpoena on a nonparty where the request covered a period of more than 10 years and extended far beyond the pertinent geographic region). Respondents have not established that plaintiff's requests are similarly broad or harmful. *See infra* Part IV.

Thus, there is no general rule that plaintiffs cannot seek nonparty discovery of documents likely to be in defendants' possession. In fact,

> [I]n appropriate circumstances, production from a third party will be compelled in the face of an argument that the "same" documents could be obtained from a party, because there is reason to believe that the files of the third party may contain different versions of documents, additional material, or perhaps, significant omissions.

*Visto Corp. v. Smartner Info. Sys., Ltd.*, Nos. 06-80339 MISC RMW (RS), 06-80352 MISC RMW (RS), 2007 WL 218771, at *3 (N.D. Cal. Jan. 29, 2007).

Plaintiffs have provided the Court with sufficient reason to believe that respondents' files may contain additional material. Defendant YouTube's poor initial record keeping raises questions about the completeness of its files, and neither YouTube nor respondents have provided the Court with reason to believe that YouTube retained *all* communications and documents shared with respondents. Moreover, respondent TriplePoint, the least involved of respondents, has already produced relevant documents not found in the more than one million pages produced by defendants. Accordingly, the Court finds that the circumstances of this case are appropriate to require document production from third parties, even though the documents are likely to be in possession of defendants.

Respondents also contend plaintiffs must wait until defendants finish production to request discovery from nonparties. Respondents claim that plaintiffs are only entitled to nonparty discovery if they can prove, once defendants have finished production, that relevant documents remain unavailable to them. This claim is without merit, however, if plaintiffs request a set of documents that is not well-defined. Plaintiffs in this case request such a set, so they may request discovery from nonparties without first exhausting discovery with defendants.

**II.      Internal analyses and communications with potential investors**

Plaintiffs seek production of internal analyses created by respondents and communications respondents had with potential investors. Respondents contend that such documents are irrelevant to the

5

underlying litigation.

*Visto* recently addressed a similar issue. 2007 WL 218771. The defendant in that case sought internal analyses from a third party venture capital firm who worked with the plaintiff. *Id.* at *4. The defendant claimed that the analyses were relevant to issues of commercial success and reasonable royalty payment pertaining to plaintiff's patent infringement claim. *Id.* The court found that the analyses were not relevant because the venture capital firm's opinions did not pertain to the issues of commercial success and reasonable royalty, even though the data underlying the opinions was pertinent. *Id.* Because the data was publicly available or available in documents produced by plaintiff, the court denied defendant's motion to compel the venture capital firm's production. *Id.*

The instant case is distinguishable from *Visto*. Whereas the analyses in *Visto* did not contain relevant, unavailable information, the internal analyses produced by respondents contain otherwise unavailable information that directly pertains to plaintiffs' theories of infringement. The *Visto* issues of commercial success and reasonable royalty depend solely on available data; however, the issues of inducement and contributory infringement in the present case hinge on defendants' intent and knowledge regarding the copyrighted material available on YouTube. Defendants' intent and knowledge is not publicly available data and may not be clear from documents produced by defendants. Due to respondents' close relationships with defendants, respondents may have obtained information regarding defendants' intent and knowledge through oral communications, which respondents then incorporated into their internal analyses and communications with potential investors. Moreover, there is a possibility that knowledge of respondents will be attributed to defendants if respondents were acting as agents of defendants. *See Bensen v. Am. Ultramar Ltd.*, No. 92 CIV. 4420 (KMW)(NRB), 1996 WL 422262, at *12 (S.D.N.Y. July 29, 1996); *Funk v. Tifft*, 515 F.2d 23, 26 n.4 (9th Cir. 1975) ("the knowledge of an agent is attributable to the principal"). Even if respondents were not acting as agents in producing the internal analyses, discovery need only be "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Accordingly, the Court finds that the internal analyses and communications with potential investors are relevant to the issues of inducement and contributory infringement.

6

### III.     Timing of requests

Plaintiffs seek documents dating from January 1, 2004 to present. Respondents contend that date range is far too broad to produce relevant information.

The Court agrees that plaintiffs seek some documents created far too early to be relevant. There is no reason to believe that respondents have relevant documents that pre-date the day on which they first considered investing in defendant YouTube. In fact, plaintiffs do not even argue that they are entitled to discovery dating from 2004 in their reply. Accordingly, Artis and TriplePoint need only produce documents dating from January 1, 2006, and Sequoia need only produce documents dating from August 1, 2005, the dates on which respondents first considered investing in YouTube.

Plaintiffs also seek documents created too late to be relevant. After the Google acquisition of YouTube on November 13, 2006, respondents Artis and TriplePoint ceased to be any different than any other Google shareholder. Plaintiffs claim that Artis and TriplePoint were different because of continuing indemnification obligations, but plaintiffs provide no reason to believe that these obligations would cause Artis and TriplePoint to have documents that Google and YouTube lack.[3] Sequoia, on the other hand, maintained a unique relationship with defendants after November 13, 2006. Sequoia held a seat on Google's nine-member board of directors until May 2007, and thus was likely privy to numerous oral communications that may have been incorporated into documents presently in Sequoia's possession. Therefore, Artis and TriplePoint need only produce documents dated no later than November 13, 2006, and Sequoia need only produce documents dated no later than May 31, 2007.

Thus, as to the documents currently in dispute, Artis and TriplePoint must produce documents dating from January 1, 2006 through November 13, 2006; and Sequoia must produce documents dating from August 1, 2005 through May 31, 2007.  These date limitations apply to discovery requests 2, 5, 7-13, 15-21, 23, and 24. The parties are to abide by previously reached agreements regarding the date ranges for other requests.

---

[3] After November 13, 2006, there is no reason to believe that Google or YouTube would fail to retain documents that were distributed to Artis and TriplePoint. YouTube's initial poor record keeping would likely not have continued past the merger date.

## IV. Burden

Respondents contend that they would suffer an undue burden in complying with plaintiffs' discovery requests. To evaluate the burden, the Court must consider "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). The amount in controversy is quite large due to the size of the parties and the alleged amount of copyright infringement on YouTube.com. The issues at stake are also important not only for defendant YouTube, but also for the future of user-generated video on the internet. Given the resources of the parties and the limited date range of this discovery, the Court finds that plaintiffs' discovery requests do not place an undue burden on respondents.

## V. Protective order

Respondents ask that this Court issue a protective order so that they need not go all the way to New York to enforce a protective order. However, the Court lacks the power to issue a protective order in this action. *See* Fed. R. Civ. P. 26(c) ("A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . .").

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby orders respondents to produce documents responsive to requests 2, 5, 7-13, 15-21, 23, and 24 in accordance with the above modifications. Respondents shall produce documents no later than **October 2, 2008**, unless plaintiffs and respondents agree on a different deadline.

**IT IS SO ORDERED.**

Dated: August 18, 2008

_____
SUSAN ILLSTON
United States District Judge